THE HONORABLE MARY JO HESTON
Chapter 13

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re<br><br>SARAH HOOVER,<br><br>   Debtor. | Chapter 13<br><br>Case No.: 19-42890-MJH<br><br>Adversary No.:  20-04002-MJH |
| SARAH HOOVER,<br><br>   Plaintiff,<br><br>  vs.<br><br>QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES, HSBC BANK USA, N.A., AS TRUSTEE OF THE FIELDSTONE MORTGAGE INVESTMENT TRUST, SERIES 2006-2, NEWREZ, LLC, AND IH6 PROPERTY WASHINGTON, L.P. D/B/A INVITATION HOMES<br><br>   Defendants. | **DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004** |

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 7007.1 of the Federal Rules of Bankruptcy Procedure, PHH

Mortgage Corporation D/B/A PHH Mortgage Services, NewRez, LLC, and HSBC Bank

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
i

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 1 of 73

USA, N.A., as Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-2 (collectively, "Defendants") hereby provide the following disclosures:

1. PHH Mortgage Corporation is a wholly owned subsidiary of PHH Corporation, a corporation organized under the laws of the State of Maryland. PHH Corporation is a wholly owned subsidiary of Ocwen Financial Corporation, a corporation organized under the laws of the State of Florida. Ocwen Financial Corporation is a publicly traded company whose shares are listed on the New York Stock Exchange. No publicly held company owns 10% or more of Ocwen Financial Corporation's stock.

2. NewRez, LLC is a wholly owned subsidiary of New Residential Investment Corp., a corporation organized under the laws of the State of Delaware. New Residential Investment Corp. is a publicly traded company whose shares are listed on the New York Stock Exchange. No publicly held company owns 10% or more of New Residential Investment Corp.'s stock.

3. HSBC Bank USA, National Association, as Trustee is a subsidiary of HSBC USA Inc., a wholly-owned subsidiary of HSBC North American Holdings Inc., which is indirectly owned by HSBC Holdings PLC (NYSE ticker: HSBC). No publicly held company owns 10% or more of HSBC Holdings PLC's stock.

Defendants reserve the right to file a supplemental statement if any required information changes.

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
ii

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH    Doc 90    Filed 02/26/21    Ent. 02/26/21 19:37:10    Pg. 2 of 73

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................................ i

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ........................................................................ v

I.      PRELIMINARY STATEMENT ........................................................................ 2

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY NECESSARY TO UNDERSTAND THE QUESTIONS TO BE PRESENTED ON APPEAL ........................................................................ 5

        A.      Borrower Ali Suleiman Obtains a Loan in his Name and Purchases Property, which is Transferred to the Suleiman Trust upon his Death ........................................................................ 5

        B.      The Loan goes into Default, and Ms. Hoover Seeks Loss Mitigation Assistance but Fails to Complete the Required Paperwork to Confirm her Status as Successor-in-Interest or to Assume the Loan ........................................................................ 7

        C.      Ms. Hoover Files for Chapter 13 Bankruptcy, but has No Record Interest in the Property or Debtor-Creditor Relationship with the Defendants, and the Foreclosure Sale Proceeds ........................................................................ 9

        D.      Ms. Hoover Files a Complaint for Violation of the Automatic Bankruptcy Stay, and Seeks a Determination that the Foreclosure Sale is Void ........................................................................ 10

III.    QUESTIONS PRESENTED ON APPEAL ........................................................................ 11

IV.     STATEMENT OF RELIEF SOUGHT BY APPEALING DEFENDANTS ........................................................................ 12

V.      REASONS WHY LEAVE TO APPEAL SHOULD BE GRANTED ........................................................................ 14

        A.      The Bankruptcy Court's Orders Concerning Annulment of the Stay and  Interpreting the Extent of the Stay are Final and Appealable as a Matter of Right ........................................................................ 15

        B.      This Court Should Grant Leave to Appeal as to Any Portion of the Bankruptcy Court's Order and Memorandum Deemed Interlocutory ........................................................................ 16

                1.      The Instant Appeal Presents Controlling Issues of Law that Will Materially Advance the Litigation ........................................................................ 18

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
iii

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 3 of 73

2.     The Instant Appeal Presents A Legal Issue With Substantial Ground for Difference of Opinion ........................ 19

       a.     *The Bankruptcy Court's ruling that Defendants willfully violated the automatic stay when they foreclosed on Property not owned by Ms. Hoover and for which there was no creditor-debtor relationship* ....................................... 20

       b.     *The Bankruptcy Court's ruling that Defendants' conduct showed a "complete disregard for the automatic stay and Ms. Hoover's rights"* .................... 23

       c.     *The Bankruptcy Court's ruling that Ms. Hoover proved her damages* ..................................... 26

       d.     *The Bankruptcy Court's ruling that a balancing of equities weighed against granting Defendants' Annulment Motion* .................................. 27

3.     An Immediate Appeal of the Bankruptcy Court's Order Would Serve Judicial Economy and Avoid Irreparable Harm .................................................................... 28

VI.    **FEDERAL RULE OF BANKRUPTCY PROCEDURE 8004(B)(1)(E) REQUIREMENT** ................................... 30

IV.    **CONCLUSION** ..................................................................... 30

**CERTIFICATE OF SERVICE** ........................................................ 31

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
iv

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

# TABLE OF AUTHORITIES

**Cases**

*Branzuela v. JPMorgan Chase Bank*, No. 19-CV-02498-VC, 2019 WL 5156722
(N.D. Cal. Oct. 15, 2019)............................................................................................ 2

*Commerce Bank v. Mountain View Vill., Inc.*, 5 F.3d 34 (3d Cir. 1993) .............................. 15

*Eskanos & Adler, P.C. v. Leetien,* 309 F.3d 1210 (9th Cir. 2002) ........................................ 19

*First Owners' Ass'n of Forty Six Hundred v. Gordon Properties, LLC*,
470 B.R. 364 (E.D. Va. 2012) .......................................................................... 18

*Helman v. Alcoa Global Fasteners, Inc.*, 637 F3d 986 (9th Cir. 2011) ................................ 18

*In re Bertain,* 215 B.R. 438 (B.A.P. 9th Cir. 1997).............................................................. 17

*In re Bradford*, No. 18-25405-B-7, 2018 WL 6422858 (Bankr. E.D. Cal. Dec. 4, 2018) ..... 25

*In re CDC Properties I, LLC*, No. 20-5495 RJB, 2020 WL 3872217
(W.D. Wash. July 9, 2020) ................................................................................ 15

*In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020 (9th Cir. 1981) ............... 18, 28

*In re Cutte*r, 398 B.R. 6 (9th Cir. BAP 2008.).................................................................... 20

*In re Dyer*, 322 F.3d 1178 (9th Cir. 2003)......................................................................... 24

*In re Enron Corp.*, No 01-16034, 2006 WL 2548592 (Sept. 5 2006) .............................. 18, 28

*In re Even St. Prod. Ltd.*, No. LACV 17-1756 JGB, 2020 WL 4559511
(C.D. Cal. Aug. 6, 2020).................................................................................... 16

*In re Fernandez*, 227 B.R. 174 (9th Cir. BAP 1998)............................................................. 26

*In re Freeland,* No. BR 19-32309-PCM7, 2020 WL 4726580
(Bankr. D. Or. Aug. 12, 2020) .......................................................................... 25

*In re Hoover,* No. 19-42890 (Jan. 25, 2020) ................... 6, 7, 9, 10, 11, 13, 14, 20, 21, 23, 27

*In re Kassover*, 343 F.3d 91 (2d Cir.2003)........................................................................... 17

*In re Kelly,* 67 B.R. 508 (Bankr. S.D. Miss. 1986)................................................................ 20

*In re Kizelnik*, 190 B.R. 171 (Bankr. S.D.N.Y. 1995)........................................................... 20

*In re Liu,* 611 B.R. 864 (BAP 9th Cir. 2020) ....................................................................... 15

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
v

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH    Doc 90    Filed 02/26/21    Ent. 02/26/21 19:37:10    Pg. 5 of 73

*In re Moo Jeong*, No. 6:19-BK-10728-WJ, 2020 WL 1277575
  (BAP 9th Cir. Mar. 16, 2020) ................................................................. 25

*In re Osuagwu*, No. 12-40853 DML, 2012 WL 3394030
  (Bankr. N.D. Tex. Aug. 15, 2012) ......................................................... 21

*In re Pacific Gas and Electric*, 280 B.R. 506 (N.D. Cal. 2002) ............................ 17

*In re Parks,* 227 B.R. 20 (Bankr. W.D.N.Y. 1998) ...................................... 20

*In re Reinhardt,* 209 B.R. 183 (Bankr. S.D.N.Y. 1997) ................................ 25

*In re Schwen*, 240 B.R. 754 (M.N. Bankr. 2001) ........................................ 21

*In re Snowden*, 769 F.3d 651 (9th Cir. 2014) ............................................. 23

*In re Sperna,* 173 B.R. 654 (B.A.P. 9th Cir. 1994) ....................................... 19

*In re Stasz,* 520 F. App'x 547 (9th Cir. 2013) ............................................. 16

*In re Univ. Med. Ctr.*, 973 F.2d 1065 (3d Cir. 1992) ................................... 25

*In re Wilkinson*, 99 B.R. 366 (Bankr. N.D. Ohio 1989) ............................... 20

*In re Zurich*, 88 B.R. 721 (Bankr. W.D. Pa. 1988) ...................................... 25

*Matter of Quality Holstein Leasing,* 752 F.2d 1009 (5th Cir. 1985) .................... 21

*McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir.1988) ......................... 26

*Miller v. Smith,* 119 Wash. 163, 205 P. 386 (1922) .................................... 21

*Mishkin v. Ageloff*, 220 B.R. 784 (S.D.N.Y. 1998) ...................................... 17

*Pivot Point Partners, LLC v. Schoenmann,*
  No. 17-CV-1680 YGR, 2017 WL 4310760 (Sept. 28, 2017) ........................ 19

*Stancil v. Bradley Investments, LLC*, 487 B.R. 331 (Bankr. D.C. 2013) ............... 25

*Taggart v. Lorenzen*, 139 S. Ct. 1795, 204 L. Ed. 2d 129 (2019) ...................... 24

*Williams v. United States (In re Williams),* 215 B.R. 289 (D.R.I. 1997) .......... 17, 29

**Statutes**

11 U.S.C. § 362(k)(1) ...................................................................... 10

11 U.S.C. § 363(a)(3) ...................................................................... 22

11 U.S.C. § 541(a)(1) ...................................................................... 21

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
vi

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 6 of 73

1  11 U.S.C. § 541(c) (2) ........................................................................................ 21

2  11 U.S.C. § 541(c)(1) ......................................................................................... 21

3  11 U.S.C. § 541(c)(2) ......................................................................... 12, 14, 22

4  28 U.S.C. § 1292(b) ...................................................... 15, 17, 18, 19, 29

5  28 U.S.C. § 158(a) ...................................................................... 1, 17, 30

6  28 U.S.C. § 158(a)(1) ......................................................................... 15

7  28 U.S.C. § 158(a)(3) ................................................................... 17, 18

8  **Rules**

9  Fed. R. Bankr. P. 8002 ............................................................ 1, 17, 30

10  Fed. R. Bankr. P. 8004(a)(2) .................................................. 1, 17, 30

11  Fed. R. Bankr. P. 8004(b) ...................................................... 1, 17, 30

12  Fed. R. Bankr. P. 8004(b)(1)(E) ..................................................... 30

13  **Codes**

14  12 C.F.R. § 1204.38(b)(1)(vi)(B) ..................................................... 2

15  12 C.F.R. § 1204.38(b)(1)(vi)(C) ..................................................... 2

16  RCW 11.96A.190 ............................................................................ 21

17  RCW 6.32.250 ................................................................................ 21

18

19

20

21

22

23

24

25

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL          HOUSER LLP
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004          600 University St.
AP No. 20-04002-MJH          Ste. 1708
vii          Seattle, WA 98101
          PH: (206) 596-7838
          FAX: (206) 596-7839

Case 20-04002-MJH     Doc 90     Filed 02/26/21     Ent. 02/26/21 19:37:10     Pg. 7 of 73

1   TO THE UNITED STATES DISTRICT COURT AND THE PARTIES AND THEIR

2   ATTORNEYS OF RECORD:

3   PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 158(a) and Rules

4   and 8004(a)(2) and (b) of the Federal Rules of Bankruptcy Procedure ("FRBP"), defendants

5   PHH Mortgage Corporation D/B/A PHH Mortgage Services ("PHH"); NewRez, LLC

6   ("NewRez"); and HSBC Bank USA, N.A., as Trustee of the Fieldstone Mortgage Investment

7   Trust, Series 2006-2 (the "Trust," collectively, "Defendants") respectfully submit this

8   Memorandum of Law in support of their Motion for Leave to Appeal ("Motion for Leave")

9   from the orders of the Honorable Mary Jo Heston, United States Bankruptcy Judge, Western

10  District of Washington (the "Bankruptcy Court"), entitled *Memorandum Decision on Cross-*

11  *Motions for Summary Judgment* (Doc. 81) ("Memorandum") and *Order on Cross-Motions*

12  *for Summary Judgment* (Doc. 82) ("Order"), entered in this case on the 8th day of February,

13  2021, ordering that the foreclosure sale of Property involved in this adversary action is void

14  and that all Defendants "shall cooperate with [Debtor] and her counsel to immediately  take

15  all necessary steps to undo the foreclosure sale of the [Property]," and granting in-part

16  Plaintiff and Debtor Sarah Hoover's Motion for Partial Summary Judgment and denying the

17  Defendants' Motions for Summary Judgment in the adversary action.

18   As discussed further below, the portions of the Order and Memorandum pertaining to

19  the Court's denial of a motion to grant annulment of the automatic stay and interpretation of

20  the automatic stay constitute final orders appealable as a matter of right.  However, to the

21  extent any portion of the Order and Memorandum is deemed not a final order, Defendants

22  move for leave to appeal.  Defendants plan to further brief this appeal in full on the merits,

23  outside of the context of this motion.

24

25

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 1

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 8 of 73

1

## I.    PRELIMINARY STATEMENT

2      This adversary proceeding arises out of a loan transaction involving real property

3  located at 18205 106th Street East, Bonney Lake, Washington 98391 (the "Property").  In

4  2006, borrower Ali Suleiman ("Suleiman") took out a $333,000 loan (the "Loan") to finance

5  the purchase of the Property.  Since 2006, Plaintiff Sarah Hoover ("Ms. Hoover"), the

6  daughter of Suleiman, has resided at the Property. In 2015, Suleiman passed away. At the

7  time of Suleiman's death, he had signed the Ali Suleiman Trust and several amendments

8  thereto, one of which named Ms. Hoover as a co-trustee of the Ali Suleiman Trust, along

9  with her brother, Amir Suleiman. After Suleiman's death, Ms. Hoover made payments on the

10 Loan.  In 2018, the Loan went into default for failure to pay. In 2019, Ms. Hoover informed

11 the Loan servicer at the time, Ocwen Loan Servicing, LLC ("Ocwen") that Suleiman had

12 passed away.

13      Immediately upon learning from Ms. Hoover of Suleiman's death, Ocwen updated the

14 borrower on the Loan account to the Estate of Ali Suleiman and authorized Ms. Hoover in

15 her capacity as co-trustee of the Ali Suleiman Trust, as a third-party representative on the

16 Loan. Ocwen also sent Ms. Hoover a successor-in-interest form and assumption forms to

17 complete if she was interested in becoming a successor-in-interest or assuming the Loan.

18 However, prior to her eventual bankruptcy filing, Ms. Hoover never availed herself of the

19 protections allowed under federal law to confirmed family member "successors-in-interest"

20 under a deed of trust by returning paperwork requested by the loan servicer.[1]  She also never

21 completed an agreement to assume the loan obligations, even though she was provided the

22

23 _____

[1] *See, e.g., Branzuela v. JPMorgan Chase Bank*, No. 19-CV-02498-VC, 2019 WL 5156472,
at *1 (N.D. Cal. Oct. 15, 2019) (explaining federal rights enforceable by "'confirmed
successors in interest,' but not by potential successors in interest").  *See also* 12 C.F.R. §
24 1204.38(b)(1)(vi)(B) and (C) (establishing process through which servicer requests and
reviews documentation from family members of deceased borrowers in order to confirm they
25 are successors in interest.)

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL              HOUSER LLP
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004        600 University St.
AP No. 20-04002-MJH                                                                     Ste. 1708
Page 2                                                                               Seattle, WA 98101
                                                                                     PH: (206) 596-7838
                                                                                     FAX: (206) 596-7839

Case 20-04002-MJH    Doc 90    Filed 02/26/21    Ent. 02/26/21 19:37:10    Pg. 9 of 73

1    opportunity to do so.  Being a representative of a Loan is not the same as being a successor-

2    in-interest or assuming the Loan. For example, an entity called "Elite Legal Network" was

3    also authorized as a third-party representative on the Loan as of September 20, 2020 (Prudent

4    Dec., ¶ 24, Ex. 11, ECF No. 64), but would certainly not assert any rights as a borrower.

5         As of June 1, 2019, Defendant PHH Mortgage Corporation ("PHH") became the

6    servicer of the Loan.  (Prudent Dec., ¶ 5, ECF No. 64.)   PHH acts as sub-servicer for

7    NewRez, LLC ("NewRez").  Ms. Hoover made no payments on the Loan while it was

8    serviced with PHH.  (Moore Dec., Ex. H, Hoover Dep. Tr. at 69:8-12, ECF No. 63.)  She had

9    recently applied for a loan modification "on behalf of the Estate of Ali Suleiman," the party

10   PHH's records showed had an interest in the Property, but the application was denied

11   because it was sent too close to the foreclosure date of September 13, 2019.  (Prudent Dec.,

12   Ex. 10, ECF No. 64.)

13        On September 9, 2019, four days before the foreclosure sale she had known about

14   since May 2019, Ms. Hoover filed for bankruptcy.  She did so for one reason: to prevent the

15   non-judicial foreclosure sale of the Property.[2]   On September 12, 2019, Elite Legal Network

16   (at the time an unauthorized third-party) faxed to PHH a one-page form relating to Ms.

17   Hoover's bankruptcy.  (Prudent Dec., ¶ 24, ECF No. 64.)  On the same date, Ms. Hoover

18   called PHH.  (*Id*. at ¶ 25.)  However, PHH could not discuss the Loan with her because she

19   was not a successor-in-interest and had not assumed the Loan. (Prudent Dec., ¶ 25, ECF No.

20   64.) As an authorized representative on behalf of the Estate of Ali Suleiman, she could make

21   payments on the Loan.  (*Id*.)  But PHH's information at that time indicated that she was not

22   authorized to discuss the Loan.  (*Id*.)

23

24   _____

25   [2] "Q. Why did you file bankruptcy? A. I was trying to save my house. Q. Is there any other reason
     you filed bankruptcy? A. It was to save my house." (Moore Dec., Exhibit H, Hoover Dep. Tr., at
     32:4-7, ECF No. 63.)

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL                    HOUSER LLP
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004       600 University St.
AP No. 20-04002-MJH                                                          Ste. 1708
Page 3                                                              Seattle, WA 98101
                                                                   PH: (206) 596-7838
                                                                   FAX: (206) 596-7839

Case 20-04002-MJH    Doc 90    Filed 02/26/21    Ent. 02/26/21 19:37:10    Pg. 10 of 73

1    Defendants believed that her bankruptcy did not affect the Loan, which was not in her

2    name as a borrower, successor-in-interest, or as an assuming party. (Prudent Dec., ¶ 25, ECF

3    No. 64.)  Then, when the sale occurred, an entity called IH6 Property Washington L.P.

4    ("IH6") purchased the Property.  Ms. Hoover failed to follow through with the requirements

5    of a Chapter 13 bankruptcy, and it was dismissed.  At the time of the bankruptcy and sale,

6    Ms. Hoover was not in title to the Property, she was not a borrower, she was not a successor-

7    in-interest and she was not an assuming party under the Loan.  Indeed, not until December

8    24, 2019 (three months after the sale) did Ms. Hoover's lawyer finally produce the

9    documents requested in March 2019, and PHH approved Ms. Hoover as a confirmed

10   successor-in-interest.  (Prudent Dec., ¶ 27, ECF No. 64.)  It was undisputed in the

11   proceedings below that if Ms. Hoover had completed the information earlier and submitted it

12   to Ocwen or PHH before September 9, 2019, then when she called on September 12, 2019,

13   she would have appeared as a successor-in-interest and PHH would have requested that the

14   sale be postponed.  (*Id*. at ¶ 28.)  The only reason that did not occur, was because Ms.

15   Hoover failed to fill out the required paperwork.  (*Id*.)

16   In spite of this, the Bankruptcy Court considering Ms. Hoover's subsequent claim for

17   violation of the automatic stay against Defendants found on cross-motions for summary

18   judgment that the Property was a part of Ms. Hoover's estate, that it was protected by the

19   automatic bankruptcy stay at the time Ms. Hoover filed, and that Defendants had willfully

20   violated the stay in foreclosing on the Property.   The Court also denied the Defendants'

21   motion to grant annulment of the bankruptcy stay.  Further, the Court found that Defendants

22   willfully violated the automatic bankruptcy stay and showed a "complete disregard" for Ms.

23   Hoover's rights.  While the portions of the Order and Memorandum pertaining to the Court's

24   interpretation and effect of the automatic stay and refusal to annul it are appealable as a

25   matter of right, to the extent any portion of the Order and Memorandum is deemed not a final

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 4

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 11 of 73

order, Defendants move for leave to appeal and request further opportunity to brief the merits of the appeal.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY NECESSARY TO UNDERSTAND THE QUESTIONS TO BE PRESENTED ON APPEAL

The following represents a summary of Plaintiff's general allegations, admissions, and facts presented to the Bankruptcy court in support of the appealing Defendants' Motion for Summary Judgment.

### A.  Borrower Ali Suleiman Obtains a Loan in his Name and Purchases Property, which is Transferred to the Suleiman Trust upon his Death

On November 25, 2003, Ms. Hoover's father, Ali Suleiman, signed a last will and testament that contained a pour-over clause placing all his remaining assets and property interests into the Suleiman Trust.  (Henry Decl. Ex. A, ECF No. 44.)  Ali Suleiman was the original trustor of the Suleiman Trust, and he named two of his children, Amir Suleiman and Ms. Hoover, as the Suleiman Trust's successor co-trustees. (Hoover Decl. Ex. 1, ECF No. 43.)

Two years later, on November 1, 2005, Ali Suleiman purchased the Bonney Lake Property (the "Property") and took title of the Property as the fee owner.  (Moore Decl. Ex. A. ECF No. 63.)  Suleiman purchased the Property in his own name and it was deeded to Ali Suleiman, and has never been deeded to Ms. Hoover. (*Id.*)  On July 25, 2006, Ali Suleiman, through Ms. Hoover acting as his attorney-in-fact, signed a 30-year $333,000 note and deed of trust secured by the Property.  (Prudent Decl. Ex. 1, ECF No. 64.)

On August 27, 2008, the note and deed of trust secured by the Property was assigned to the Trust.  (Prudent Decl. Ex. 3, ECF No. 64.)  Ocwen Loan Servicing, LLC, a subsidiary of Ocwen Financial Corporation ("Ocwen"), serviced the Loan from 2011 to May 30, 2019.

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 5

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 12 of 73

1 (Prudent Decl. ¶ 5, ECF No. 64.)  PHH, at the time an indirect subsidiary of Ocwen, began

2 servicing the Loan on June 1, 2019. (Prudent Decl. ¶ 5, ECF No. 64.)

3       On March 24, 2011, the Suleiman Trust was amended to add mandatory language,

4 contained in the revised section "B.2.3.1 Residence," regarding the distribution of the

5 Property to Ms. Hoover after Ali Suleiman's death.  (Hoover Decl. Ex. 1, ECF No. 43.)  The

6 amendment provides in relevant part:

> B.2.3.1 Residence.  . . .  [A]s soon as practicable after the death of
> Trustor, Trustee shall distribute any and all interest Trustor, or the Trust
> Estate, may have in that certain residence and real property located at
> 106th Street East, Bonney Lake, Washington, to Trustors' daughter,
> Sarah V. Hoover, if she is surviving. This distribution . . . will carry
> with it any obligations against the residence . . . Additionally, to the
> extent that Trustor or the Trust Estate is responsible for paying for any
> or all part of such loan, such amount shall be considered a loan by
> Trustor or the Trust Estate to Sarah, shall be considered an asset of the
> Trust and specifically allocated to Sarah as a part of her share of the
> remainder Trust."

15 (Hoover Decl. Ex. 1, ECF No. 43.)

17       In addition to the above provision the Suleiman Trust contained a spendthrift

18 provision stating, "[n]o share or interest in principal or income of this Trust shall be liable for

19 the debts of any beneficiary nor subject to the process of seizure of any court, **nor an asset**

20 **in the bankruptcy of any beneficiary**; and no beneficiary hereunder shall have the power to

21 anticipate, alienate, or encumber his or her interest in the Trust Estate or the income

22 therefrom."  (Bankr. No. 19-42890, ECF 33-1 at 29, ¶ B.3.6).  The Trust further provided

23 that the co-trustees of the Trust had the discretion to refrain from distributing the subject

24 Property, (*Id*. at 11, ¶ 4.3.25), which Ms. Hoover apparently elected to do with regard to the

25 Property.  Further, the Trust provided that any transfer of property out of it required the

26 consent of both co-trustees.  (*Id*. at 18, ¶ 6.10.)

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 6

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

1    On February 24, 2015, Ali Suleiman died, and Amir Suleiman and Ms. Hoover

2  became co-trustees to the Suleiman Trust.  (Hoover Decl. Exs. 1 & 2, ECF No. 43; Memo

3  Decision, ECF No. 81 at 5.)  Ali Suleiman did not convey the Property to his Trust prior to

4  his death.  Further, Defendants have always contended – and Ms. Hoover has never

5  presented evidence to the contrary – that Ms. Hoover and her brother, as co-trustees of the

6  Trust, never conveyed or attempted to convey title to the Property to Ms. Hoover prior to the

7  foreclosure sale.  (Defendants' Reply at 2, ECF 75).  Instead, it is undisputed that the

8  Property remained in the Trust.

9
10
   **B.  The Loan goes into Default, and Ms. Hoover Seeks Loss Mitigation
        Assistance but Fails to Complete the Required Paperwork to Confirm her
        Status as Successor-in-Interest or to Assume the Loan**

11    In March 2018, the Loan went into default. (Prudent Decl. ¶ 13, ECF No. 64.)

12  Because Ocwen was not aware of Ali Suleiman's death, Ocwen sent a notice of default

13  addressed to Ali Suleiman, who remained both the record owner of the Property and the only

14  owner of which Ocwen was aware.  (Moore Decl. Ex. H, Hoover Dep. 22:19–23:7, ECF No.

15  63; Bankr. No. 19-42890, Lappano Decl. at ¶ 4, ECF No. 19.)  Later in 2018, Ms. Hoover

16  and her husband, Leo Hoover, completed loss mitigation forms in which they failed to

17  disclose (as requested on the forms) that the borrower under the loan was deceased, and they

18  e-signed the forms in the name of the borrower, Mr. Suleiman, even though he had been

19  deceased for several years.  (Prudent Dec., ¶ 14, Ex. 5 at 5, 10, ECF No. 64.)

20    In January 2019, Ms. Hoover advised Ocwen for the first time that Mr. Suleiman had

21  passed away.  (Prudent Dec., ¶ 15, ECF No. 64.)  At this point, Ocwen changed the account

22  name from "Borrower Ali Suleiman" to "Borrower Estate of Ali Suleiman."  (Prudent Dec.,

23  ¶ 16, ECF No. 64.)  Ocwen added Ms. Hoover and her brother as contacts for the Loan

24  account, in their capacity as trustees of the Suleiman Trust, and designated them as

25  authorized third parties in their co-trustee capacities.  (Henry Decl. Ex. A, Prudent Dep.

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 7

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 14 of 73

10:16-11:17, 54:20-55:1, Aug. 12, 2020, ECF No. 73.)  Until the authorization expired, this role allowed them to call Ocwen to discuss the account (Ex. A, Prudent Dep. 55:2-13, Aug. 12, 2020, ECF No. 73), but did not make them obliged under the Loan or secure them any contractual rights under the note and deed of trust.  (Prudent Decl. Ex. 6; ¶¶ 19-21, 25 ECF No. 64.)  Also in January 2019, Ocwen provided Ms. Hoover with a "family transfer package," which consisted of paperwork she could complete and return to Ocwen if she wished to assume the Loan obligations.  (*Id.* at ¶ 17.)

When a son or daughter who has inherited property through the death of a parent provides proof of their status as a successor-in-interest, allowing confirmation of that interest, they are entitled to certain rights under federal law.  (*See infra* n. 1 and accompanying text.)  Accordingly, in March 2019, Ocwen sent Ms. Hoover a request for proof of her successor-in-interest status.  However, Ms. Hoover did not provide the requested information.  (Prudent Decl. ¶¶ 18, 19, ECF No. 64.)

On May 9, 2019, Ocwen, in the process of acquisition by PHH, initiates foreclosure proceedings against the Property through its trustee, Quality Loan Service Corporation of Washington ("QLS"). (Hoover Decl. ¶¶ 17-19, ECF No. 43.) A non-judicial foreclosure sale is scheduled for September 13, 2019.  (Complaint, ECF No. 1, ¶ 25.)  It is undisputed that Ms. Hoover received notice of the sale in May 2019.  (*Id.*)

On May 15, 2019, Ocwen again asked Ms. Hoover to complete the family transfer packet in order to assume the obligations of the Loan.  (Prudent Decl. ¶ 19, Ex. 8 ECF No. 64.)  She provided an incomplete response, and on May 23, 2019, Ocwen sent Ms. Hoover a missing document letter, indicating that several documents were missing from the family transfer packet materials. (Prudent Decl. ¶ 19, Ex. 9, ECF No. 64.)  The missing document letter asked, among other things, whether Ms. Hoover wanted to assume the Loan in the name of the Ali Suleiman Trust or in the name of Ms. Hoover.  (*Id.*)  If the former, then Ms.

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 8

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 15 of 73

Hoover would have to submit a recorded deed from Mr. Suleiman to the Ali Suleiman Trust. (*Id*.)  If the latter, then Ms. Hoover would have to submit a recorded deed from the Ali Suleiman Trust to Sarah Hoover.  (*Id*.)  Ms. Hoover failed to do either of these things.  As a result, any material she returned to Ocwen was incomplete, and she could not satisfy the requirements to assume the Loan.  (*Id*.)

### C. Ms. Hoover Files for Chapter 13 Bankruptcy, but has No Record Interest in the Property or Debtor-Creditor Relationship with the Defendants, and the Foreclosure Sale Proceeds

On September 9, 2019, Ms. Hoover filed a Chapter 13 bankruptcy petition with no schedules (the "Bankruptcy").  (Bankr. Case No. 19-42890, ECF No. 1.)  It is undisputed that she filed for bankruptcy for the sole purpose of stopping the non-judicial foreclosure sale of the Property.  (Moore Decl., Ex. H, Hoover Dep. Tr., at 32:4-7, ECF No. 63.)  Ms. Hoover listed PHH as a creditor on her bankruptcy petition and mailing matrix.  (See, e.g., Hoover Decl. ¶ 42, ECF No. 43; Bankr. Case No. 19-42890, ECF No. 1.)  PHH received notice of the Bankruptcy on September 9, 2019, via fax. (Bankr. No. 19-42890, Hoover Decl. Ex. J, ECF No. 25; Henry Decl. Ex. A, Prudent Dep. 85, ECF No. 73.)  Ms. Hoover also notified PHH that she had filed for bankruptcy via telephone on September 12, 2019.  (Henry Decl. Ex. B, ECF No. 44.)  However, at the time, PHH was contractually barred from discussing the Loan with her because Ms. Hoover was not a successor-in-interest, nor had she assumed the Loan. (Prudent Decl. ¶ 25, ECF No. 64.)  She therefore had no debtor-creditor relationship with PHH. (Prudent Decl. ¶ 25, ECF No. 64.)  Further, Ms. Hoover was not in title to the Property because title remained in the Suleiman Trust.  Indeed, at the time of the foreclosure sale, IH6 researched the condition of the title prior to the sale and there were no public records that disclosed Ms. Hoover's claimed interest.  (Bankr. No. 19-42890, Lappano Decl. at ¶ 4, ECF No. 19.)

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 9

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 16 of 73

On September 13, 2019, the non-judicial foreclosure sale proceeded as scheduled and the Property was sold to IH6 for $356,000 with surplus funds of $167,407.  (Prudent Decl. ¶ 26, ECF No. 64.)  The Property was transferred via Trustee's Deed to IH6 on September 17, 2019.  (Bankr. No. 19-42890, Stenman Decl. Ex. D, ECF No. 20.)  Several days later, NewRez executed a limited power of attorney making PHH, successor by merger to Ocwen, its attorney-in-fact to perform, among other things, the tasks related to a foreclosure proceeding. (Henry Supp. Decl. Ex. G, ECF No. 50.)

On September 26, 2019, the Bankruptcy was dismissed for failure to file schedules, statements, lists or a Chapter 13 plan.  (Bankr. No. 19-42890, ECF No. 14.)  The Bankruptcy closed on October 2, 2019.  (Bankr. No. 19-42890.)

More than three months after the non-judicial foreclosure sale, on December 24, 2019, Ms. Hoover finally provided to PHH the documents that PHH had requested in March 2019 to confirm her as successor-in-interest under the Loan.  (Prudent Decl. ¶ 27, ECF No. 64.)  Having finally received the paperwork, PHH approved Ms. Hoover as the confirmed successor-in-interest. (Prudent Decl. ¶ 27, ECF No. 64.)

### D.  Ms. Hoover Files her Complaint for Violation of the Automatic Bankruptcy Stay, and Seeks a Determination that the Foreclosure Sale is Void

On January 10, 2020, IH6 filed a motion to reopen Ms. Hoover's Bankruptcy and to annul the automatic stay for the Property.  (Bankr. No. 19-42890, ECF Nos. 17, 18.)  On January 25, 2020, Ms. Hoover, through counsel, filed a one-count complaint against the Defendants and QLS for willful violation of the automatic stay under 11 U.S.C. § 362(k)(1), seeking a determination that the sale of the Property was void, and requesting damages and punitive damages.  (ECF No. 1; Bankr. No. 19-42890, ECF No. 23.)  The Court reopened the Bankruptcy on February 14, 2020. (Bankr. No. 19-42890, ECF No. 37.)  PHH joined IH5's motion to annul the automatic stay shortly thereafter (collectively, the "Annulment Motion.)

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 10

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 17 of 73

1 (Bankr. No. 19-42890, ECF No. 40.)  On March 3, 2020, the Court entered an order in the
2 Bankruptcy consolidating the Annulment Motion into the Adversary Proceeding.  (Bankr.
3 No. 19-42890, ECF No.44.)

4        On August 6, 2020, Plaintiff filed a Motion for Partial Summary Judgment (ECF No.
5 42) on the issue of whether the sale was void and whether Defendants' conduct constituted a
6 willful violation of the automatic stay.  In turn, Defendants filed a Motion for Summary
7 Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic
8 stay with prejudice, and dismissal from the adversary proceeding.  (ECF Nos. 62, 65.)  The
9 Bankruptcy Court granted Plaintiff's Motion for Partial Summary Judgment as to the
10 appealing Defendants and declared the sale void (ECF No. 82), ordering that "Defendants
11 shall cooperate with Ms. Hoover and her counsel to immediately take the necessary steps to
12 undo the foreclosure sale of the Bonney Lake Property."  (ECF No. 82 at 3.)  On February
13 26, 2021, Defendants filed a Notice of Appeal.

14 

**III.    QUESTIONS PRESENTED ON APPEAL**

15        Defendants' Notice of Appeal presents four questions for this Court's attention:

16        1.    Whether the Bankruptcy Court erred in granting Plaintiff's Motion for Partial
17 Summary Judgment against the Defendants and in denying the Defendants' Motion for
18 Summary Judgment with regard to whether the Sale was void under the bankruptcy stay,
19 given Defendants established that Ms. Hoover's interest in the Property was not protected
20 under the automatic stay because she was not in title to the Property, she was not obliged on
21 the Loan and there was therefore no debtor-creditor relationship, she was not a confirmed
22 "successor in interest" in the Defendants' records due to her own failure to complete the
23 necessary documents to be so designated, and the Property was held in a spendthrift trust
24 that excluded it from being property of the estate under § 541(c)(2).

25
26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 11

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

2.      Whether the Bankruptcy Court erred in denying Defendants' Annulment Motion based on the Court's balancing of the equities, which failed to appropriately weigh the fact that Ms. Hoover obtained a benefit by living at the Property; filed for Bankruptcy for the sole purpose of stopping the sale of Property she knew secured a Loan that had been in long-term default and which she could not reinstate; delayed four months before filing for bankruptcy and notifying Defendants the day before the sale of her bankruptcy; engaged in other inequitable conduct; and then sought damages and punitive damages in her claim against Defendants.

3.      Whether the Bankruptcy Court erred in granting Plaintiff's Motion for Partial Summary Judgment against Defendants and in denying the Defendants' Motion for Summary Judgment with regard to whether Defendants engaged in a willful violation of the automatic stay, and also erred in ruling PHH acted with a "complete disregard" for Ms. Hoover's rights," because there was no evidence that Defendants had knowledge that Ms. Hoover was in title to the Property (given that she wasn't), nor that Defendants had knowledge that Ms. Hoover was obliged under the contractual terms of the Loan (given that she wasn't), nor did Defendants have any basis for believing Ms. Hoover had an interest in the Property that was protected by the automatic stay, among other reasons.

## IV.   STATEMENT OF RELIEF SOUGHT BY APPEALING DEFENDANTS

Defendants move this Court for leave to appeal the Bankruptcy Court's Order and Memorandum as to any portion of those findings or orders deemed to be interlocutory orders. Further, Defendants note that portions of the Order and Memorandum are appealable as a matter of right.  Defendants require further opportunity to brief the merits of the instant appeal upon the Court's ruling on Defendants' motion.

On appeal, Defendants seek reversal of the Bankruptcy Court's Orders below as follows:

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 12

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH    Doc 90    Filed 02/26/21    Ent. 02/26/21 19:37:10    Pg. 19 of 73

1.      Reversal of the Bankruptcy Court's Order ruling that the foreclosure sale of the Property "is void and all Defendants shall cooperate with Ms. Hoover and her counsel to immediately take all necessary steps to undo the foreclosure sale of the [Property]."  (ECF No. 65 at 3.)

2.      Reversal of the Bankruptcy Court's Order denying the Defendants' various Motion for Summary Judgment.

3.      Related to 1 and 2 above, reversal of the Bankruptcy Court's legal conclusion that who held title to the Property, and whether Ms. Hoover assumed the obligations of the Loan or became a recognized successor in interest (a status available if certain legal requirements are satisfied), was irrelevant to the issue of whether the automatic bankruptcy stay protected the Property, and remand to the Bankruptcy Court for reconsideration of these issues.

4.      Related to 1 and 2 above, reversal of the Bankruptcy Court's legal conclusion that the spendthrift provisions of the Suleiman Trust were not restrictions on the transfer of Property under the Trust that excluded the Property from becoming property of the estate under § 11 U.S.C. 541(c)(2) and from being protected by the bankruptcy stay, and remand to the Bankruptcy Court for reconsideration of this issue.

5.      Reversal of the Bankruptcy Court's Order denying IH6's and PHH's Annulment Motion.  (Bankr. No. 19-42890, ECF Nos. 18, 40.)

6.      Related to 5 above, reversal of the Bankruptcy Court's mixed finding of fact and law that the balancing of equities weighed against granting annulment of the automatic bankruptcy stay that became effective when Ms. Hoover filed for bankruptcy for the sole purpose of avoiding a valid foreclosure. (ECF No. 81 at 18-22.)

7.      Reversal of the Bankruptcy Court's Order granting Ms. Hoover's Motion for Partial Summary Judgment as to the Defendants on the issue of whether the Defendants

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 13

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 20 of 73

1  committed a willful violation of the automatic bankruptcy stay.  (Bankr. No. 19-42890, ECF

2  Nos. 18, 40.)

3      8.    Related to 7 above, reversal of the Bankruptcy Court's order concerning the

4  pertinent standard for determining whether a willful violation of the automatic stay has

5  occurred, (ECF No. 81 at 23-24), and remand to the Bankruptcy Court for reconsideration of

6  this issue.

7      9.    Reversal of the Bankruptcy Court's finding of fact that PHH's actions showed

8  a "complete disregard for the automatic stay and Ms. Hoover's rights."  (ECF No. 81 at 20.)

9  **V.    REASONS WHY LEAVE TO APPEAL SHOULD BE GRANTED**

10     As discussed further below, portions of this Court's Order and Memorandum are

11  appealable as a matter of right because they concern interpretation of the automatic

12  bankruptcy stay, a decision on a motion to grant annulment, and a decision ordering the

13  turnover of Property.  Accordingly, leave to appeal is not necessary as to these aspects of the

14  Bankruptcy Court's Order and Memorandum, and Defendants' appeal must be allowed at

15  least in-part, as a matter of right.  *See* 28 U.S.C. § 158(a)(1) (allowing appeal to a district

16  court of final bankruptcy orders, as a matter of right).  However, with regard to any portion

17  of the Bankruptcy Court's Order and Memorandum that is deemed interlocutory, Defendants

18  move this Court for leave to appeal.  Here, leave is wholly appropriate in light of the fact that

19  the Order and Memorandum satisfy the standard set forth in 28 U.S.C. § 1292(b), which

20  typically guides – with flexibility – an appellate court's decision on whether to allow leave of

21  an interlocutory bankruptcy order.  Further, leave to appeal is appropriate because the

22  Bankruptcy Court's order directing Defendants to unwind the non-judicial foreclosure of the

23  Property is a cumbersome task that could have irreversible consequences, and deprives an

24  innocent third-party of Property it purchased at the foreclosure sale, which justifies leave to

25  appeal.

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 14

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

## A. The Bankruptcy Court's Orders Concerning Annulment of the Stay and Interpreting the Extent of the Stay are Final and Appealable as a Matter of Right

In considering whether to grant leave to appeal, this Court must first "determine whether the bankruptcy judge's order is final, making leave to appeal unnecessary." *Commerce Bank v. Mountain View Vill., Inc.*, 5 F.3d 34, 36-37 (3d Cir. 1993). *See also* 28 U.S.C. § 158(a)(1). The "Ninth Circuit takes a pragmatic or flexible approach to finality in bankruptcy cases" due to the unique considerations presented by bankruptcy proceedings. *In re Liu*, 611 B.R. 864, 870 (BAP 9th Cir. 2020). *See also In re CDC Properties I, LLC*, No. 20-5495 RJB, 2020 WL 3872217, at *4–5 (W.D. Wash. July 9, 2020) (noting precedent that resolution of motion for stay relief has large "practical consequences," which justifies finding such orders final and appealable); *Commerce Bank*, 5 F.3d at 36-37 (noting "pragmatic approach" to finality adopted by courts in light of "considerations unique to bankruptcy proceedings.")[3]

Under precedent in this and other Circuits, the Bankruptcy Court's rulings interpreting the extent of the automatic bankruptcy stay in this case, finding that it applied to Property that Ms. Hoover did not own, and finding that the stay barred Defendants' conduct, are all final and appealable. *United States v. Nicolet, Inc.*, 857 F.2d 202 (3d Cir.1988) (holding decisions concerning application of automatic stay are appealable as a matter of right); *Lomas Financial Corp. v. Northern Trust Co.*, 932 F.2d 147, 151 n. 2 (2d Cir.1991) (same); *In re Nat'l Envtl. Waste Corp.*, 129 F.3d 1052, 1054 (9th Cir. 1997) ("Orders granting or denying relief from the automatic stay are deemed to be final orders."); *Moore v. ING Bank, FSB*, No. C11-139Z, 2011 WL 3586152, at *3 (W.D. Wash. Aug. 16, 2011) (noting 9th Circuit precedent that denial or grant of relief from automatic stay is a final

---

[3] In deciding whether a bankruptcy order is final, Courts have "given weight to such factors as the impact on the assets of the estate, the preclusive effect of a decision on the merits, the need for additional fact-finding on remand, and whether the interests of judicial economy will be furthered. *Id.* at 37.

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 15

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 22 of 73

1    order).  Further, the Bankruptcy Court's denial of the Defendants' motion to grant annulment

2    is a final order appealable as a matter of right.  *See, e.g., In re Aheong*, 276 B.R. 233, 250

3    (BAP 9th Cir. 2002) (holding decisions regarding annulment of stay are appealable as a

4    matter of right); *In re Nat'l Envtl. Waste Corp*., 129 F.3d at 1054.

5            Finally, the Bankruptcy Court's order requires the Defendants to immediately work

6    with Ms. Hoover to unwind the non-judicial foreclosure of the Property, which will

7    effectively dispossess IH6 of the Property it purchased at the foreclosure sale.  An immediate

8    appeal from an interlocutory order is appropriate where an order, as here, directs the prompt

9    delivery of property.  *Matter of Simpson*, 36 F.3d 450, 452 (5th Cir. 1994) ("We have held

10   that a judgment compelling a defendant to turn over property is appealable as of right

11   pursuant to 28 U.S.C. § 158(a)"); *In re Stasz*, 520 F. App'x 547 (9th Cir. 2013) (holding

12   order compelling turnover of estate property is immediately appealable).  In *In re Even St.

13   Prods. Ltd*., for instance, the District Court found that a bankruptcy order determining that

14   Debtors had "established an ownership right in royalties, and then mandated that [another

15   party] turn the disputed funds over to Debtors as estate property," was a final and appealable

16   order.  No. LACV 17-1756 JGB, 2020 WL 4559511, at *5 (C.D. Cal. Aug. 6, 2020).  The

17   Court noted that an order "requiring the turnover and accounting of property . . . resolves and

18   seriously affects substantive rights," and is therefore final and appealable.  *Id.*

19           Accordingly, portions of the Bankruptcy Court's order are final and appealable as a

20   matter of right, and grant of leave is not required for Defendants' appeal to proceed as to

21   those matters.

22       **B.  This Court Should Grant Leave to Appeal as to Any Portion of the
             Bankruptcy Court's Order and Memorandum Deemed Interlocutory**
23

24           As to any portion of the Bankruptcy Court's Order and Memorandum deemed

25   interlocutory, the District Court has jurisdiction to hear appeals from such orders upon

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 16

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 23 of 73

granting a motion for leave to appeal.  *See* 28 U.S.C. § 158(a)(3), Fed. R. Bankr. P. 8002, 8004(a)(2), (b).  In deciding whether to allow leave to appeal an interlocutory order, reviewing courts are generally guided by the standard set forth in 28 U.S.C. § 1292(b).  *In re Bertain*, 215 B.R. 438, 441 (BAP 9th Cir. 1997); *In re Pacific Gas and Electric*, 280 B.R. 506 (N.D. Cal. 2002).  However, 28 U.S.C. § 158(a)(3) vests courts with discretion to permit interlocutory appeals even if the order falls outside of the criteria in § 1292(b), and the standard is therefore applied with flexibility.  *Williams v. United States (In re Williams)*, 215 B.R. 289, 298, n. 6 (D.R.I. 1997) ("28 U.S.C. § 158(a)(3) obviously vests broader discretion [than § 1292(b)] in the district courts to permit interlocutory appeals"); *Mishkin v. Ageloff*, 220 B.R. 784, 791 (S.D.N.Y. 1998) ("a flexible approach to the concept of finality in the bankruptcy context supports a similarly flexible approach to the standard for granting interlocutory appeals from interlocutory orders of a bankruptcy court"); *In re Kassover*, 343 F.3d 91, 94 (2d Cir.2003) (noting leave to hear interlocutory bankruptcy appeals is discretionary and the use of the § 1292(b) criteria is not mandatory.)

Under 28 U.S.C. § 1292(b), grant of leave to appeal is appropriate where the issue on appeal (1) involves a controlling question of law (2) over which there is a substantial ground for difference of opinion and (3) if an immediate appeal would materially advance the ultimate termination of the litigation.  *In re Bertain*, 215 B.R. at 441.  Here, as discussed below, all three elements of §1292(b) are present, and leave to appeal is therefore fully appropriate.  Additionally, courts considering whether to grant leave under § 158(a)(3) have also considered whether there are circumstances in which "serious, perhaps irreparable consequence[s] are threatened," which can be "effectually challenged only by immediate appeal."  *Williams*, 215 B.R. at 298, n. 6.

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 17

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 24 of 73

1

2

    1.  <u>The Instant Appeal Presents Controlling Issues of Law that Will Materially Advance the Litigation</u>

3

4

Under the first prong of the § 1292(b) test, the existence of a controlling issue of law

5

provides a strong justification for granting leave to appeal.  A question of law is

6

"controlling" if its resolution on appeal could "materially affect the outcome of the litigation

7

in district court."  *In re Cement Antitrust Litig*. (MDL No. 296), 673 F.2d 1020 (9th Cir.

8

1981) (holding review of a recusal order would be collateral to, and not controlling of, the

9

basic issues of the lawsuit.)  For instance, where there is a legal question before the Court

10

that will determine the liability alleged in the Complaint and/or terminate the action, leave to

11

allow an appeal is highly appropriate.  *Helman v. Alcoa Global Fasteners, Inc*., 637 F3d 986

12

(9th Cir. 2011) (permission to appeal under § 1292(b) granted where issue of definition of

13

"high seas" in federal statute was determinative of the viability of the complaint); *In re*

14

*Enron Corp.*, No 01-16034, 2006 WL 2548592, at *4 (Sept. 5 2006) (noting issue of law is

15

"controlling" if reversal would end the litigation or otherwise materially affect the outcome

16

of litigation in the bankruptcy court).

17

Here, several "controlling issue[s] of law" are in play.  The Bankruptcy Court's

18

decision that the Property became part of Ms. Hoover's bankruptcy estate upon her filing,

19

and was protected by the automatic stay, is a "controlling issue of law" that, if reversed, will

20

result in dismissal of the action and avoid further unnecessary and expensive litigation and

21

discovery efforts, and the time and expense of trial.  The issue is also purely a legal question,

22

as the facts concerning the extent and nature of Ms. Hoover's interest are undisputed.  *See*

23

*First Owners' Ass'n of Forty Six Hundred v. Gordon Properties, LLC*, 470 B.R. 364 (E.D.

24

Va. 2012) (determining it is appropriate to grant leave to consider appeal where one issue on

25

appeal is factual, but the other issue is exclusively a legal issue),  The existence of a legal

26

issue that is the primary focus of the appeal, has been decided ahead of trial, and would

terminate the action if reversed, is a compelling reason for this Court to grant review.  *Id*.

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 18

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

1    Similarly, nearly every other issue raised in the Questions Presented on Appeal (*see*

2    *infra* Section III) would result in termination of the instant case if reversed by this Court.

3    Here, the Bankruptcy Court incorrectly determined that the equities did not weigh in favor of

4    granting an annulment of the automatic stay, and reversal of this issue would obviate Ms.

5    Hoover's claim for violation of the stay.  Further, the Bankruptcy Court incorrectly found

6    that the Defendants engaged in willful conduct.  (ECF No. 81 at 23-24.)  Reversal of this

7    issue would also terminate the underlying case, because willfulness is a required element of a

8    claim for violation of the automatic bankruptcy stay.  *Eskanos & Adler, P.C. v. Leetien*, 309

9    F.3d 1210, 1214-16 (9th Cir. 2002) (setting forth elements of claim for violation of stay.)

10   Although these questions do potentially involve mixed consideration of facts and the law,

11   review is appropriate in light of the fact that this Court also has before it a pure legal question

12   concerning whether the Property was a part of the estate and/or protected by the bankruptcy

13   stay, and considering these additional issues would materially impact the litigation by either

14   terminating it or clarifying the evidence and proceedings necessary at a future bench trial.

15          2.   The Instant Appeal Presents A Legal Issue With Substantial Ground for
16               Difference of Opinion

17   Grant of leave to appeal is also warranted because substantial grounds exist for a

18   difference of opinion on the legal questions before the Court.  *In re Sperna*, 173 B.R. 654,

19   658 (BAP 9th Cir. 1994) (conflicting views on issue created substantial ground for difference

20   of opinion, supporting leave to appeal).  With regard to this factor, "substantial grounds for a

21   difference of opinion on a legal question are generally found to exist where: the relevant

22   circuit court has not spoken on the point and other circuits are in dispute; complicated

23   questions of foreign law are involved; or it presents novel and difficult questions of first

24   impression." *Pivot Point Partners, LLC v. Schoenmann*, No. 17-CV-1680 YGR, 2017 WL

25   4310760, *3 (Sept. 28, 2017).  Here, such grounds exist as to several aspects of the

26   Bankruptcy Court's rulings.

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 19

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 26 of 73

1
2

       *a.*   *The Bankruptcy Court's ruling that Defendants willfully violated the automatic stay when they foreclosed on Property not owned by Ms. Hoover and for which there was no creditor-debtor relationship*

3
4
5
6
7
8
9
10
11
12
13
14
15
16

Substantial grounds for a difference of opinion exist as to the Bankruptcy Court's ruling that the Defendants willfully violated the automatic bankruptcy stay when they foreclosed on Property not owned by Ms. Hoover, and for which there was no creditor-debtor relationship. The "whole Chapter [13] presupposes a debtor-creditor relationship." *In re Kelly*, 67 B.R. 508, 513 (Bankr. S.D. Miss. 1986). Here, there was none. Where a party is not in ownership of property and is "otherwise a stranger to the mortgage indebtedness," the party cannot block a foreclosure sale by simply filing a Chapter 13. *In re Kizelnik*, 190 B.R. 171, 173-178 (Bankr. S.D.N.Y. 1995) (holding non-mortgagor has "no right to invoke the bankruptcy laws to stay a secured creditor's right to foreclose on its collateral, which the non-mortgagor does not own."); *In re Parks*, 227 B.R. 20 (Bankr. W.D.N.Y. 1998) (holding that although debtor was an heir to the property, stay should not apply because debtor was not the debtor's debt); *In re Wilkinson*, 99 B.R. 366 (Bankr. N.D. Ohio 1989) (granting stay because no debtor-creditor relationship existed where debtors were not personally liable on the underlying mortgage taken out by the deceased parent).

17
18
19
20
21
22
23
24
25
26

Further, the Suleiman Trust contained a spendthrift provision that explicitly prevented attempts by creditors to reach the trust assets and income. (Bankr. No. 19-42890, ECF 33-1 at 29, ¶ B.3.6.) RCW 6.32.250; RCW 11.96A.190. Under Ninth Circuit precedent, a beneficial interest protected by a valid spendthrift provision does not become property of the estate under 11 U.S.C. § 541(c)(1) and (2). *In re Cutter*, 398 B.R. 6, 19 (9th Cir. BAP 2008.) The Bankruptcy Court's Memorandum referred to the Defendants' arguments on these issues as raising "irrelevant technicalities with title, successor in interest status, and failing to properly assume the Loan, [misconstruing] the scope of § 541(a)(1)." (Memorandum, ECF No. 81 at 15.) The comment demonstrates the scope of the Bankruptcy Court's

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 20

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

1   misunderstanding.  First, "legal title" to property is not a technical matter; rather, it can be

2   absolutely dispositive of whether property became part of a bankruptcy estate under §

3   541(a)(1).  *See, e.g., In re Osuagwu*, No. 12-40853 DML, 2012 WL 3394030, at *2 (Bankr.

4   N.D. Tex. Aug. 15, 2012).  *See also Matter of Quality Holstein Leasing*, 752 F.2d 1009,

5   1013 (5th Cir. 1985) ("The bankruptcy code provisions cannot be used to allow a bankruptcy

6   estate to benefit from property that the debtor did not own.")

7       Further, the Bankruptcy Court found that Ms. Hoover's interest in the Property had

8   "accrued" as of the date of the Bankruptcy and therefore were part of the estate under

9   Washington law (Memorandum, ECF No. 81 at 16), but this view overlooked the technical

10  details of the Suleiman Trust, which granted the co-trustees discretion as to the transfer of

11  property out of the Trust, and also required both co-trustees' consent to transfer.  (Bankr. No.

12  19-42890, ECF 33-1 at 11, ¶ 4.3.25.)  Where two co-trustees must consent to transfer

13  property out of a Trust, and have not done so, courts have upheld the validity of the

14  spendthrift provision keeping the trust assets from the estate.  *In re Schwen*, 240 B.R. 754

15  (M.N. Bankr. 2001).  In sum, under the facts as shown in the record, the Trust had a valid

16  spendthrift provision that precluded Ms. Hoover's interest in the Trust property from

17  becoming a part of the estate.  As long as the Property was left in the Trust, according to its

18  terms, the Property was protected by Bankruptcy Code § 541(c)(2) and never became a part

19  of the bankruptcy estate, and the automatic stay under § 363(a)(3) therefore did not apply.

20      Further, the Bankruptcy Court's ruling overlooks the fact that "technicalities with

21  title" – i.e., the transfer of title through a recorded document – is one the primary method

22  through which parties have actual or constructive notice of the interest of others.  *See, e.g.,*

23  *Miller v. Smith*, 119 Wash. 163, 167–68, 205 P. 386, 388 (1922) (noting failure to record

24  interest meant third parties had no notice of it).  Here, because Ms. Hoover was not in title,

25  any routine title report obtained prior to foreclosure would not have disclosed her interest,

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 21

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

1  and Defendants could not have known and would not have had any way to verify that

2  interest.  The automatic stay provision does not envision that parties will halt collection

3  efforts as to all of their financial interests upon notice of an unknown third-party's

4  bankruptcy proceeding, where the third-party holds no known interest.  It would be

5  unreasonable to expect a creditor to stop foreclosure activity against a borrower on the basis

6  of a phone call from a non-borrower reporting that the non-borrower is filing for bankruptcy,

7  when there is no basis to believe the non-borrower has an interest in the property being

8  foreclosed.  Yet, this is exactly what the Bankruptcy Court's ruling requires of creditors.

9         Similarly, the Bankruptcy Court clearly misunderstood the import of the fact that Ms.

10  Hoover never provided the Defendants the documents that they requested she provide in

11  order for her to assume the obligations under the Loan, or obtain protection as a successor-in-

12  interest.[4]  Having not provided these documents, Ms. Hoover's only relationship to the Loan

13  was that of a third-party who at one point had received authorization from the borrower to

14  speak with the Defendants about the Loan account.  The third-party authorization did not

15  oblige Ms. Hoover on the Loan, nor provide the Defendants any notice that she contended

16  she was obliged on the Loan or a debtor of the Defendants.  (*See infra* n. 1 and

17  accompanying text, explaining the federal rights available to individuals who have provided

18  the lender the documentation required to become confirmed successors-in-interest).

19

20

21

22

---

23  [4] As explained in Defendants' Motion for Summary Judgment, if Ms. Hoover had ever provided
    adequate notice and confirmation of her interest in the Property, or completed the successor-in-

24  interest and assumption documents sent to her, PHH would have understood her interest and
    postponed the sale.  (Defs' Motion, ECF No. 62, at 10-11.)  *See also* Defendants' Response to

25  Plaintiff's Motion for Partial Summary Judgment, ECF No. 68, at 8-9, wherein Defendants argue
    that they had inadequate information to know of Ms. Hoover's interest in the Property.

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 22

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 29 of 73

1

2

       *b. The Bankruptcy Court's ruling that Defendants' conduct showed a "complete disregard for the automatic stay and Ms. Hoover's rights"*

3

4

5

6

7

8

9

10

11

      The Bankruptcy Court also found that the Defendants' conduct was not only willful, but showed a "complete disregard for the automatic stay and [her] rights."  (ECF No. 81 at 20.)  The ruling comes appreciably close to indicating the Bankruptcy Court found conduct culpable of allowing punitive damages, and whether the Court intended this is unclear.  *In re Snowden*, 769 F.3d 651, 655–56 (9th Cir. 2014) (discussing court ruling finding punitive damages available for violation of bankruptcy stay due to party's "reckless disregard for the rights of customers who file for bankruptcy relief.")  However, the evidence absolutely does not support a finding of "complete disregard" as to any Defendant, or demonstrate the kind of intent required to allow punitive damages.

12

13

14

15

16

17

18

19

20

21

22

23

      First of all, Ms. Hoover did not move for summary judgment on the issue of punitive damages or the issue of whether any Defendant had the requisite intent to allow punitive damages, so Defendants had no opportunity to develop an appropriate record on that issue.  (Plaintiff's MSJ, at 3, ECF No. 42.)  Further, even the Bankruptcy Court's lesser finding of a "willful" violation is unfair and unwarranted given it is undisputed that no public records existed that disclosed Ms. Hoover's claimed interest in the property,[5] and Ms. Hoover never completed the paperwork requested of her to assume the Loan obligations or become a successor-in-interest, which would have placed her in an entirely different relationship with the Defendants from that of an individual who is merely a third party authorized to speak about the Loan account.  (*See infra* n. 1 and accompanying text.)  The Bankruptcy Court found that all parties agreed that Ms. Hoover had some interest in the Property (Memorandum at 15, ECF 81), but failed to appreciate that there was no evidence the

24

25

26

---

[5] *See* Bankr. No. 19-42890, Lappano Decl. at ¶ 4, ECF No. 19.

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 23

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH    Doc 90    Filed 02/26/21    Ent. 02/26/21 19:37:10    Pg. 30 of 73

1    Defendants were aware of that interest at the time of the foreclosure sale.[6]  Additionally, her

2    bankruptcy filing four days before the sale was scheduled to take place provided little

3    opportunity for the Defendants to investigate her claim that she had an interest in the

4    Property, and there is no evidence that she provided Defendants proof of any interest.

5         Substantial ground for a difference of opinion exists as to whether a decision to

6    foreclose on property in which there is no known interest held by a person declaring

7    bankruptcy is actually a "willful" violation of the automatic bankruptcy stay.   Admittedly,

8    Ninth Circuit precedent indicates that the "willfulness" standard for violations of the

9    automatic stay does not require specific intent, but only knowledge of the bankruptcy and

10   intentional conduct.  *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003).  However, interpreting

11   this standard as requiring a lender to stop foreclosure efforts on the mere report of a

12   bankruptcy filing by one who has no known or recorded interest in the property is taking an

13   extreme view of the willfulness standard, and finding knowledge where there is none.  *See,*

14   *e.g., Taggart v. Lorenzen,* 139 S. Ct. 1795, 1804, 204 L. Ed. 2d 129 (2019) ("We note that

15   the automatic stay provision uses the word "willful," a word the law typically does not

16   associate with strict liability . . . .")  Defendants were at most aware of the bankruptcy filing

17   of a third-party who was not obliged as a borrower and was not in title to Property, but was at

18   most a co-trustee of the entity in title.   Under the Bankruptcy Court's reasoning, if Amir

19   Suleiman had called PHH to advise he had filed for bankruptcy, PHH would have also

20   willfully violated the automatic stay by proceeding with a sale, simply by because he's a co-

21   trustee of the Suleiman Trust.  What if the Suleiman Trust had dozens of trustees?  Or

22   multiple beneficiaries contacting the servicer to state they have an unknown interest and are

23

24   _____

25   [6] For example, Ms. Hoover was asked during her deposition when she first provided the loan
     servicer with a full copy of the terms of the Suleiman Trust, and answered "I don't know."
     (Moore Dec., Ex. H, Hoover Dep. Tr., at 70:21-71:4, ECF 63.)

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 24

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

1    filing for bankruptcy?  These examples highlight the fact that PHH did not have a reasonable

2    opportunity to understand that it was violating an automatic bankruptcy stay.

3            Further, in recent years a shift has occurred in the Ninth Circuit, such that several

4    courts in this jurisdiction have now held that a party's "subjective good faith belief" that a

5    bankruptcy stay is inapplicable "insulates the entity from liability for sanctions . . . ."  *See,*

6    *e.g., In re Bradford*, No. 18-25405-B-7, 2018 WL 6422858, at *5 (Bankr. E.D. Cal. Dec. 4,

7    2018).  *See also In re Freeland*, No. BR 19-32309-PCM7, 2020 WL 4726580, at *2 (Bankr.

8    D. Or. Aug. 12, 2020) (noting "some question whether the traditional standard [for

9    willfulness] is still applicable, or if the standard may be shifting such that a finding of

10   willfulness is precluded where a creditor had an objectively reasonable basis for believing it

11   was not violating the stay); *In re Moo Jeong*, No. 6:19-BK-10728-WJ, 2020 WL 1277575, at

12   *4 (BAP 9th Cir. Mar. 16, 2020) (noting assumption that contempt standard applied to a

13   discharge violation – requiring no reasonably objective basis for conduct – also applies in the

14   context of an automatic stay violation.)  Here, Defendants have an objectively reasonable

15   basis for believing they have never violated the automatic stay, which they wish to assert on

16   appeal to this Court.

17           Relatedly, a long-recognized exception to the traditional "willfulness" standard has

18   been recognized where the law regarding the alleged violation is sufficiently unsettled.  *See*

19   *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1088-89 (3d Cir. 1992).  *See also Stancil v. Bradley*

20   *Investments, LLC*, 487 B.R. 331, 343-344 (Bankr. D.C. 2013) (for an alleged violation of the

21   automatic stay "when the law is sufficiently unsettled, willful violation of the statutory

22   command is absent, and damages are not recoverable, because the offending party has not

23   acted in violation of a command of which it had fair notice."); *In re Reinhardt*, 209 B.R. 183,

24   185-88 (Bankr. S.D.N.Y. 1997) (violation of stay was not willful where counsel acted in

25   climate of confusing case law precedent); *In re Zurich*, 88 B.R. 721, 724-26 (Bankr. W.D.

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 25

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Pa. 1988) (violation of stay was not willful where there were no cases dealing with relevant section of Bankruptcy Code).  Here, where substantial grounds existed for finding that the bankruptcy stay was inapplicable, a finding that any violation was "willful" was not supported.

> c.   *The Bankruptcy Court's ruling that Ms. Hoover proved her*
>      *damages*

In the proceedings below, the Bankruptcy Court's Memorandum commented:

> "PHH asserts that Ms. Hoover has not alleged or shown any actual damages
> and therefore Ms. Hoover has nont made a prima facie claim for willful
> violation of the automatic stay.  PHH's MSJ 15, ECF No. 62.  This argument
> is unfounded.  *See* Hoover Amended Complaint ¶¶ 68-69, ECF No. 7 (alleging
> actual damages and emotional distress)."

(ECF No. 81 at 3, n.2.)  The ruling is puzzling, and in error.  In their motion for summary judgment, the Defendants argued that Ms. Hoover could not assert a claim for violation of the automatic bankruptcy stay because she could not establish that she had been damaged by the violation.  (*See* Def.'s MSJ, ECF No. 62 at 15.)  They further contended that Ms. Hoover was required to submit evidence sufficient to raise a general issue of material fact on this issue, and that she had not done so in her Motion for Summary Judgment.  (*Id.*)  They also contended that Ms. Hoover could not do so, because she could not show that PHH or the Trust might not have been granted relief from stay had it asked.  *In re Fernandez*, 227 B.R. 174, 180-81 (9th Cir. BAP 1998).  Ms. Hoover failed to present any evidence in response to the argument.  Accordingly, the Bankruptcy Court's ruling on the damages element was in error, because the Bankruptcy Court relied on allegations in Ms. Hoover's Complaint, when Ms. Hoover was required to come forward with affirmative evidence of her damages.  *See, e.g., McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 808-09 (9th Cir.1988).

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 26

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 33 of 73

### d. The Bankruptcy Court's ruling that a balancing of equities weighed against granting Defendants' Annulment Motion

Further, substantial ground for a difference of opinion also exists as to whether the Bankruptcy Court correctly ruled that a balancing of the interests weighed in favor of denying Defendants' Annulment Motion.  The Court's decision was based in-part on a finding that Ms. Hoover did not abuse the bankruptcy process  (Memorandum at 19, ECF No. 81), yet it is undisputed that Ms. Hoover filed for Bankruptcy four days before the scheduled sale, for the sole purpose of stopping the Sale of Property she knew secured a Loan that had been in long-term default.  (Moore Dec., Exhibit H, Hoover Dep. Tr., at 32:4-7, ECF 63.)  Ms. Hoover had no intention of filing schedules, a bankruptcy plan or anything else substantive, nor did she before the bankruptcy was initially dismissed.  It is also clear from her testimony that she did not have the ability to cure the arrearages owed on the Loan, and was merely seeking to delay the inevitable. (Moore Dec., Exhibit H, Hoover Dep. Tr., at 73:11-74:1, ECF 63.)  Further, she actively concealed her interest in the Property by leaving title in the name of Mr. Suleiman, in spite of the Defendants' repeated requests to provide a recorded deed.

Moreover, Ms. Hoover had been aware of the foreclosure sale since at least four months prior to its scheduled date, yet did not notify Defendants of her bankruptcy filing until just days before the sale, leaving little time to respond. (Moore Dec., Exhibit H, Hoover Dep. Tr., at 32:4-7, ECF 63.)  Even then, the notice she gave was inadequate and half-hearted, given she had an unauthorized third party provide notice to PHH, and did not notify QLS until the day after the Trustee's Deed issued.  Because of her failure to assume the loan, complete successor-in-interest documents, and/or file for bankruptcy sooner so that there was adequate time to engage with Defendants, IH6 purchased property for $356,000, having no actual, constructive, or inquiry notice of Hoover's bankruptcy filing.  (Bankr. No. 19-42890, Lappano Decl. at ¶¶ 4, 8 ECF No. 19.)  Yet, Ms. Hoover did not even go through with her

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004 AP No. 20-04002-MJH
Page 27

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 34 of 73

1  bankruptcy, but instead allowed it to be dismissed, and never took any steps to reopen it,

2  vacate the dismissal, and address the issues with her bad faith filing.  Allowing her to take

3  advantage of the automatic bankruptcy stay under such circumstances was, itself, inequitable.

4      The Bankruptcy Court's ruling was premised in-part on her concern that annulling the

5  stay would result in the ouster of Ms. Hoover and family members from the Property,

6  depriving them of their free accommodations.  But the burden of locating and paying a rent

7  or mortgage on a place to live is a burden shared by the majority of the adults living in the

8  United States, and is minimal in comparison to the substantial liability faced by Defendants,

9  as Ms. Hoover seeks punitive damages from them.  (ECF No. 7 at 15, § (4).)

10      Further, the Bankruptcy Court's ruling gave inappropriate weight to Ms. Hoover's

11  self-serving claim that she was depositing $2,000 in trust with her counsel monthly to protect

12  the Defendants' interest in the Property.  (Memorandum at 2, ECF 81.)  Ms. Hoover has not

13  been ordered to turn over this money.  She is also absolutely not entitled to reinstate the Loan

14  and avoid acceleration by suddenly proceeding to make monthly payments of $2,000.

15          3.  <u>An Immediate Appeal of the Bankruptcy Court's Order Would Serve</u>

16              <u>Judicial Economy and Avoid Irreparable Harm</u>

17      Finally, § 1292(b) favors allowing leave to appeal an interlocutory order where the

18  appeal would materially advance the ultimate termination of the litigation. This occurs where

19  the "appeal promises to advance the time for trial or to shorten the time required for trial."

20  (*See Enron, supra*, 2006 WL 2548592, *4.)  Alternatively, this factor is met when resolution

21  of the controlling question of law "may appreciably shorten the time, effort, or expense of

22  conducting a lawsuit."  *In re Cement Antitrust Litig*. (MDL No. 296), 673 F.2d 1020, 1027

23  (9th Cir. 1981).  Here, no less than three issues on appeal are wholly dispositive of Ms.

24  Hoover's claims and would result in complete termination of the action if reversed:   (1)

25  whether the automatic bankruptcy stay protected the Property; (2) whether a balancing of the

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL                           HOUSER LLP
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004              600 University St.
AP No. 20-04002-MJH                                                        Ste. 1708
Page 28                                                                    Seattle, WA 98101
                                                                           PH: (206) 596-7838
                                                                           FAX: (206) 596-7839

1  equities weighed in favor of granting annulment of the stay; and (3) whether the Defendants

2  engaged in a willful violation of the stay.  If leave to appeal is not granted, Defendants will

3  be forced to proceed with a jury trial in this matter that would be completely avoided if this

4  Court reverses the Bankruptcy Court on any one of these issues.  Moreover, even if this

5  Court does not reverse in full, clarification from this Court on the legal issues within may

6  avoid an unnecessary trial, streamline the parties' trial proceedings and any future discovery,

7  and result in a more expedient and efficient resolution of the case.

8          Further, as noted above, courts considering whether to grant leave to appeal under §

9  158(a)(3) sometimes consider issues beyond the § 1292(b) factors, such was whether there

10  are "serious, perhaps irreparable consequence . . . ."  *Williams*, 215 B.R. at 298, n. 6.  Here,

11  the Bankruptcy Court has ordered that Defendants immediately cooperate with Ms. Hoover

12  to unwind the non-judicial foreclosure of the Property.  (ECF No. 65 at 3.)  There are

13  multiple issues that require consideration in unwinding a non-judicial foreclosure.  For

14  instance, it is important not only to ensure that the recorded ownership interest in the

15  Property be returned to the party who held that interest prior to the sale, but also to ensure

16  that all junior lien interests in the Property that were previously wiped clean by the

17  foreclosure sale are reinstated.  Accordingly, unwinding a non-judicial foreclosure likely

18  cannot be done with a single document, may require judicial assistance, and is not a process

19  free from legal dispute.  If this Court reverses, review of the interlocutory order at this point

20  would allow the parties to avoid cumbersome efforts to restore the interest in the Property to

21  pre-foreclosure status.  Even if the Court does not reverse, review of the interlocutory order

22  would allow for certainty in the finality of the order and certainty in the disposition of this

23  Property.

24          In sum, good cause support Defendants' Motion for Leave to File Appeal under 28

25  U.S.C. § 158(a) and FRBP Rules 8002 and 8004(a)(2) and (b).

26

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 29

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

## VI.     FEDERAL RULE OF BANKRUPTCY PROCEDURE 8004(B)(1)(E) REQUIREMENT

As required by Fed. R. Bankr. P. 8004(b)(1)(E), a copy of the Memorandum Decision on Cross-Motions for Summary Judgment (Doc. 81) ("Memorandum") and Order on Cross-Motions for Summary Judgment (Doc. 82) ("Order"), the orders appealed from, are attached.

## IV.     CONCLUSION

In sum, the instant appeal concerns both orders that are final, as well as orders that this Court may find are interlocutory in nature.  For all of the foregoing reasons, Defendants respectfully request that the District Court grant the instant motion for leave to appeal, such that Defendants may appeal the Bankruptcy Court's Order and Memorandum in their entirety.  Defendants will file a further brief on the merits pending a ruling from this Court on the instant motion, or as otherwise required.

DATED: February 26, 2021

**HOUSER LLP**

By: */s/ Emilie K. Edling*
Emilie K. Edling WSBA No. 45042
eedling@houser-law.com
Robert W. Norman, Jr. WSBA No. 37094
bnorman@houser-law.com
*Attorneys for Defendants PHH Mortgage Corporation, HSBC Bank USA, N.A., as Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-2, and NewRez, LLC*

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 30

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH    Doc 90    Filed 02/26/21    Ent. 02/26/21 19:37:10    Pg. 37 of 73

**Below is a Memorandum Decision of the Court.**

*Mary Jo Heston*

**Mary Jo Heston**
**U.S. Bankruptcy Judge**

**(Dated as of Entered on Docket date above)**

---

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>SARAH HOOVER,<br><br>     Debtor. | Bk. No. 19-42890 |
| SARAH HOOVER,<br><br>     Plaintiff,<br><br>  v.<br><br>QUALITY LOAN SERVICE CORPORATION OF WASHINGTON; PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES; HSBC BANK USA, N.A., AS TRUSTEE OF THE FIELDSTONE MORTGAGE INVESTMENT TRUST, SERIES 2006-2; NEWREZ, LLC; AND IH6 PROPERTY WASHINGTON, L.P. D/B/A INVITATION HOMES,<br><br>     Defendants. | Adversary No. 20-04002<br><br>**MEMORANDUM DECISON ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

### I. INTRODUCTION.

  This adversary proceeding and the pending motions for summary judgment (collectively the "MSJs") involve the impact of the automatic stay on the post-bankruptcy

MEMORANDUM DECISON ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

1
2
3

foreclosure sale of the Plaintiff's, Ms. Sarah Hoover ("Ms. Hoover"), family residence located at 18205 106th Street East, Bonney Lake, Washington (the "Bonney Lake Property"), and whether each defendant is liable for any violation of the automatic stay.

4
5
6
7
8
9
10
11

The parties to the MSJs are: (i) Plaintiff-Debtor, Ms. Hoover; (ii) Defendant, PHH Mortgage Corporation ("PHH"), the special servicer for the loan (the "Loan") secured by the Bonney Lake Property; (iii) Defendant, NewRez, LLC ("NewRez"), the general servicer of the Loan; (iv) Defendant, HSBC Bank USA, N.A (the "Trust"), as Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-2 (the "Beneficiary"); (v) Defendant, Quality Loan Service Corporation of Washington ("QLS"), the foreclosure trustee; and (vi) Defendant, IH6 Property Washington L.P. ("IH6"), the third-party purchaser at the foreclosure sale.

12
13

The following motions for summary judgment came before the Court for argument on November 20, 2020:

14
15
16

(1) Ms. Hoover's Motion for Partial Summary Judgment, ECF No. 42 ("Debtor's MSJ"), seeking a declaration that the foreclosure sale violated the automatic stay and that each defendant's conduct constitutes a willful violation of the automatic stay;[1]

17
18
19
20

(2) QLS's Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice and its dismissal from the adversary proceeding, ECF No. 58 ("QLS's MSJ");

21
22
23

(3) PHH's, the Trust's, and NewRez's Joint Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice and its dismissal from this adversary proceeding, ECF No. 62 ("PHH's MSJ");[2] and

24
25

---

[1] The Debtor's MSJ defers the issue of compensatory and punitive damages as alleged in the Amended Complaint to a future proceeding.

(4) IH6's Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice, its dismissal from this adversary proceeding, and its motion for annulment of the automatic stay, ECF No. 65 ("IH6's MSJ").[3]

The Court having considered the files, records, evidence, and arguments presented in connection with the MSJs hereby makes the following findings of fact and conclusions of law.[4]

## II. FINDINGS OF FACT.

The following material facts are undisputed, and they are stated generally in chronological order.

**November 25, 2003:** Ali Suleiman signs his valid last will and testament (the "Will") that contains a pour-over clause placing all his remaining assets and property interests into the Suleiman Trust. Henry Decl. Ex. A, ECF No. 44.

Ali Suleiman created the Ali Suleiman Trust (the "Suleiman Trust"). Hoover Decl. Ex. 1, ECF No. 43. Ali Suleiman later amends the Suleiman Trust four times on January 4, 2006, June 2, 2009, March 24, 2011, and March 29, 2014. Hoover Decl. Ex. 1, ECF No. 43. Ali Suleiman was the original trustor and he named two of his children, Amir Suleiman and Ms. Hoover, as the Suleiman Trust's successor co-trustees. Hoover Decl. Ex. 1, ECF No. 43.

**November 1, 2005:** Ali Suleiman purchases the Bonney Lake Property and he takes title of the Bonney Lake Property as the fee owner. Moore Decl. Ex. A. ECF No. 63.

---

[2] PHH asserts that Ms. Hoover has not alleged or shown any actual damages and therefore Ms. Hoover has not made a prima facie claim for willful violation of the automatic stay. PHH's MSJ 15, ECF No. 62. This argument is unfounded. *See* Hoover Amended Complaint ¶¶ 68–69, ECF No. 7 (alleging actual damages and emotional distress).

[3] PHH joined IH6's Motion to Annul to Automatic Stay. Bankr. No. 19-42890, ECF No. 40.

[4] All parties have consented to this Court's entry of final orders or judgments in this adversary proceeding. *See* Local Rules W.D. Wash. Bankr. 7012-1(a) and (c); 28 U.S.C. § 157 and § 1334(b).

**July 25, 2006:** Ali Suleiman, through Ms. Hoover acting as his attorney-in-fact, signs a 30-year $333,000 note secured by the Bonney Lake Property with Fieldstone Mortgage Company. Prudent Decl. Ex. 1, ECF No. 64. Later in 2011, Ali Suleiman signs a loan modification on the note reducing the principal balance to $213,750.00. Prudent Decl. Ex. 4, ECF No. 64. Additionally, between 2000 to 2012, Ali Suleiman purchases two other real properties and conveys them to the Suleiman Trust: 24805 22nd Avenue South, Kent, Washington 98032 (the "Kent Property"), and 3435 Auburn Way, South #63, Auburn, Washington 98092 (the "Auburn Property"). *See* Moore Decl. Exs. B, C, D, E, ECF No. 63. Ali Suleiman's son, Amir Suleiman, resides at the Kent Property from approximately 2005 until 2017. Moore Decl. Ex. I, ECF No. 63.

**August 27, 2008:** The Bonney Lake Property's deed of trust is assigned to HSBC and recorded on September 2, 2008. Prudent Decl. Ex. 3, ECF No. 64. Ocwen Loan Servicing, LLC, a subsidiary of Ocwen Financial Corporation, ("Ocwen") serviced the Loan from 2011 to May 30, 2019. Prudent Decl. ¶ 5, ECF No. 64. PHH, at the time an indirect subsidiary of Ocwen, began servicing the Loan on June 1, 2019. Prudent Decl. ¶ 5, ECF No. 64.

**March 24, 2011:** The Suleiman Trust's third amendment changes § B.2.3.1 adding mandatory language about distributing the Bonney Lake Property to Ms. Hoover after Ali Suleiman's death:

> B.2.3.1 Residence. Trustor and the Trust Estate has held title to the property located at 18205 106th Street East, Bonney Lake, Washington, and Trustor is currently named as co-signer or Surety on the primary residence loan executed by Sarah and primary lender for the purposes of securing financing on said property for Sarah. Accordingly, as soon as practicable after the death of Trustor, Trustee shall distribute any and all interest Trustor, or the Trust Estate, may have in that certain residence and real property located at 106th Street East, Bonney Lake, Washington, to Trustors' daughter, Sarah V. Hoover, if she is surviving. This

distribution shall be in addition to Sarah's distributive share of the remainder Trust Estate and will carry with it any obligations against the residence . . . Additionally, to the extent that Trustor or the Trust Estate is responsible for paying for any or all part of such loan, such amount shall be considered a loan by Trustor or the Trust Estate to Sarah, shall be considered an asset of the Trust and specifically allocated to Sarah as a part of her share of the remainder Trust."

Hoover Decl. Ex. 1, ECF No. 43.

**February 24, 2015:** Ali Suleiman dies, Amir Suleiman and Ms. Hoover becomes co-trustees to the Suleiman Trust, and Mr. Suleiman's death triggers the contingent mandatory language in § B.2.3.1 making the Bonney Lake Property ready for distribution. Hoover Decl. Exs. 1 & 2, ECF No. 43.

Additionally, in May 2015, as co-trustees of the Suleiman Trust, Amir Suleiman and Ms. Hoover sell the Auburn Property and convey, via deed, the Auburn Property to a third party. Moore Decl. Ex. F, ECF No. 63. Then in 2017, the co-trustees of the Suleiman Trust sell the Kent Property and convey, via deed, the Kent Property to a third party for $320,000. Moore Decl. Ex. G, ECF No. 63. The co-trustees split the proceeds equally from both property sales among Amir Suleiman, Ms. Hoover, and Ali Suleiman's other child. Moore Decl. Ex. I, Amir Suleiman Dep. 18:2–13, 20:7–10, July 10, 2020, ECF No. 63.

**March 2018:** The Loan goes into default. Prudent Decl. ¶ 13, ECF No. 64.

**April 9, 2018:** Ocwen sends a notice of default to Ms. Hoover but it is addressed to Ali Suleiman. Moore Decl. Ex. H, Hoover Dep. 22:19–23:7, ECF No. 63.

**August 6, 2018:** Ms. Hoover and her husband, Leo Hoover, submit a non-account holder authorization form and mortgage assistance application to Ocwen, to explain their mortgage delinquency and seek assistance. Prudent Decl. Ex. 5, ECF No. 64.

MEMORANDUM DECISON ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 5

**January 2019:** Sony Prudent, as PHH's Federal Rule of Civil Procedure's 30(b)(6) designee, admits that Ms. Hoover and her brother are both individually authorized third parties on Ocwen's Bonney Lake Property loan account. Henry Decl. Ex. A, Prudent Dep. 10:16–11:17, Aug. 12, 2020, ECF No. 73.

**January 11, 2019:** Ms. Hoover continues the loss mitigation process attempting to remedy the mortgage delinquency and properly assume the Loan. Hoover Decl. Ex. 2, ECF No. 43. Ms. Hoover's efforts to "save [their] home" by working with Ocwen/PHH continue for months thereafter. *See* Hoover Decl. ¶ 15–16, ECF No. 43. Ms. Hoover provides Ali Suleiman's death certificate to Ocwen on January 11, 2019. Hoover Decl. Ex. 2, ECF No. 43; Henry Decl. Ex. A, Prudent Dep. 39:24–25, Aug. 12, 2020, ECF No. 73.

**January 17, 2019:** Ocwen adds Ms. Hoover and her brother, Amir Suleiman, to the Bonney Lake Property Loan account as trustees of the Suleiman Trust and authorizes them on this account in their co-trustee capacities. Henry Decl. Ex. A, Prudent Dep. 54:21–55:1, Aug. 12, 2020, ECF No. 73. Such authorization allows Ms. Hoover and her brother to call Ocwen, later PHH, and discuss the account. Ex. A, Prudent Dep. 55:2–13, Aug. 12, 2020, ECF No. 73.

**March 14, 2019**: HSBC, which is the Trust, appoints NewRez as its attorney-in-fact to have, among other things, the authority to pursue any deficiency, debt or other obligation, secured or unsecured, including but not limited to those arising from foreclosure or other sale. Henry Supp. Decl. Ex. G, ECF No. 50.

**May 9, 2019:** Ocwen, in the process of acquisition by PHH, initiates foreclosure proceedings against the Bonney Lake Property through its trustee, QLS. Hoover Decl. ¶¶ 17–19, ECF No. 43. QLS's notice of trustee's sale is addressed to Ms. Hoover personally and

schedules the non-judicial foreclosure sale for September 13, 2019. Hoover Decl. ¶¶ 17–19, ECF No. 43.

**May 10, 2019, through September 8, 2019:** Ms. Hoover continues contacting Ocwen/PHH and QLS attempting to remedy the mortgage delinquency, avoid foreclosure, and submit paperwork as requested by Ocwen/PHH to become a "confirmed successor in interest."[5] *See generally* Hoover Decl. ¶¶ 18–40, ECF No. 43. On June 1, 2019, PHH begins servicing the Loan following the completion of the merger of Ocwen into PHH. Prudent Decl. ¶ 5, ECF No. 64; Henry Supp. Decl. Ex. G, ECF No. 50. PHH's records for the Loan also include the business records of the Loan's previous servicers. Prudent Decl. ¶ 5, ECF No. 64. When Ocwen transferred its servicing of the Loan to PHH, Ocwen incorporated the Loan's transaction history and other documents into PHH's records. Prudent Decl. ¶ 5, ECF No. 64.

In June 2019, Ms. Hoover contacts PHH as a confirmed authorized third party on the Bonney Lake Property loan account. Henry Decl. Ex. A, Prudent Dep. 69:13–17, Aug. 12, 2020, ECF No. 73. Ms. Hoover requests a reinstatement quote from QLS on August 14, 2019. Hoover Decl. Ex. 6, ECF No. 43. PHH learns that Ali Suleiman is deceased on August 28, 2019. Henry Decl. Ex. A, Prudent Dep 74:1–2, ECF No. 73. On August 30, 2019, PHH completes its verification that Ms. Hoover is an authorized third party on the Bonney Lake

---

[5] *See* 12 C.F.R. § 1024.31 Definitions (eff. April 19, 2018) ("Confirmed successor in interest means a successor in interest once a servicer has confirmed the successor in interest's identity and ownership interest in a property that secures a mortgage loan subject to this subpart . . . Successor in interest means a person to whom an ownership interest in a property securing a mortgage loan subject to this subpart is transferred from a borrower, provided that the transfer is: (1) A transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety; (2) A transfer to a relative resulting from the death of a borrower; (3) A transfer where the spouse or children of the borrower become an owner of the property").

1

2

Property loan account and is the "executor or administrator of the [Ali Suleiman] estate."
Henry Decl. Ex. A, Prudent Dep 94:4–25, ECF No. 73.

3

4

5

6

7

8

9

After Ms. Hoover and her husband spent months requesting information from
Ocwen/PHH and QLS, QLS sends Ms. Hoover a $27,695.82 reinstatement quote on
September 4, 2019. Hoover Decl. Ex. 6, ECF No. 43. The September 4, 2019 reinstatement
quote states "[t]he [t]otal [a]mount [d]ue to [r]einstate, listed in the chart below, must be
remitted no later than 9/12/2019." Hoover Decl. Ex. 6, ECF No. 43. This is nine days before
the scheduled non-judicial foreclosure sale.

10

11

12

13

14

15

16

**September 9, 2019:** Ms. Hoover files a chapter 13 bankruptcy petition with no
schedules (the "Bankruptcy"). Bankr. Case No. 19-42890, ECF No. 1. Ms. Hoover lists PHH
as a creditor on her bankruptcy petition and mailing matrix but not QLS. *See*, *e.g.*, Hoover
Decl. ¶ 42, ECF No. 43; Bankr. Case No. 19-42890, ECF No. 1. At the time of the Bankruptcy
and the later foreclosure sale, Ms. Hoover, her husband and their two children as well as Ms.
Hoover's niece and her two children are residing at the Bonney Lake Property. Hoover Decl.
at ¶ 2, ECF No. 25.

17

18

19

20

**September 9, 2019:** PHH receives notice of the Bankruptcy on September 9, 2019, via
fax. Bankr. No. 19-42890, Hoover Decl. Ex. J, ECF No. 25; Henry Decl. Ex. A, Prudent Dep.
85, ECF No. 73.

21

22

23

**September 12, 2019:** QLS performs the "[r]equired searches . . . [on] PACER
generated on 09/12/19 – one day before sale . . . ." Henry Decl. Stenman Ex. 3, ECF No. 73.
Additionally,

24

25

> [QLS] used LexisNexis Banko[ ], a third-party vendor, to search for
> and identify bankruptcy filings. These searches were specifically
> conducted for Sarah Hoover on: 1/31/2019, 2/20/2019, 3/10/2019,
> 4/18/2019, 4/24/2019, 5/9/2019, 7/15/2019, 8/9/2019, 9/6/2019,

> 9/12/2019, 9/13/2019, 9/14/2019, 9/16/2019, 9/17/2019, 9/18/2019.
> Banko never disclosed this bankruptcy filing in any of its searches.
> Quality also confirmed that the social security number it used for
> the Debtor in its searches is accurate and the social security
> number contained within the records of the loan servicer.

Bankr. Case No. 19-42890, Stenman Decl. ¶ 9, ECF No. 20.

Ms. Hoover also notifies PHH again, via telephone, of the Bankruptcy on September 12, 2019. Henry Decl. Ex. B, ECF No. 44. There is no record of PHH notifying QLS of the Bankruptcy before the scheduled non-judicial foreclosure sale.

**September 13, 2019:** QLS, as foreclosing trustee, conducts the scheduled non-judicial foreclosure sale and sells the Bonney Lake Property to IH6 for $356,000 with surplus funds of $167,407 (the "Sale"). Prudent Decl. ¶ 26, ECF No. 64. QLS transfers these surplus funds to this Court's registry upon Ms. Hoover's and the Defendants' stipulation on May 18, 2020. Prudent Decl. ¶ 26, ECF No. 64; Order Directing Deposit of Surplus Funds be Placed in a Non-Interest-Bearing Account in Court Registry Re: Stipulation for Deposit of Surplus Funds into the Court Registry Pending Further Court Order (ECF No. 15), ECF No. 40; Stipulated Statement Deposit of Surplus Funds, ECF No. 15.

**September 17, 2019:** QLS signs, notarizes, and delivers the trustee's deed (the "Deed") upon sale to IH6. Bankr. No. 19-42890, Stenman Decl. Ex. D, ECF No. 20.

**September 17, 2019**: NewRez executes a limited power of attorney making PHH, successor by merger to Ocwen, its attorney-in-fact to perform among other things the tasks related to a foreclosure proceeding. Henry Supp. Decl. Ex. G, ECF No. 50.

**September 24, 2019:** QLS receives notice of the Bankruptcy at 11:13 AM for the first time from Ms. Hoover's agent, David Miller of Elite Legal Network. Henry Decl. Ex. L, Stenman Dep. 56:4–23, July 7, 2020, ECF No. 73. Upon learning of the Bankruptcy, QLS

1   does not notify PHH or IH6. Henry Decl. Ex. L, Stenman Dep. 90:7–11, July 7, 2020, ECF No.

2   73. At 12:46 PM that day, QLS "ran [Ms. Hoover's] docket and forwarded to [bankruptcy] HUB

3   for review." Henry Decl. QLS Ex. 1, ECF No. 73. Jeff Stenman, President of QLS, testifies at

4   his July 7, 2020 deposition that QLS could not verify Ms. Hoover's interest in the Bonney Lake

5   Property relating to the Bankruptcy so QLS did not notify PHH. Bankr. No. 19-42890,

6   Stenman Decl. ¶ 2, ECF No. 20; Henry Decl. Ex. L, Stenman Dep. 90:1–11, July 7, 2020,

7   ECF No. 73.

8       **September 25, 2019:** As noted by an IH6 employee, Jaqueline Rumens, IH6's agent

9   posts a Notice to Vacate on the Bonney Lake Property. Henry Decl. IH6 Ex. 1, ECF No. 73 at

10  2.

11      **September 26, 2019:** IH6 records the Deed in Pierce County, Washington (recording

12  No. 2019092660566). Bankr. No. 19-42890, Stenman Decl. Ex. D, ECF No. 20. The

13  Bankruptcy is dismissed the same day for failure to file schedules, statements, lists, or a

14  chapter 13 plan. Bankr. No. 19-42890, ECF No. 14.

15      **October 2, 2019:** The Bankruptcy is closed. Bankr. No. 19-42890.

16      **October 3, 2019:** Ms. Rumens leaves a voicemail for Ms. Hoover "to discuss her

17  options." Henry Decl. IH6 Ex. 1, ECF No. 73.

18      **November 16, 2019:** Ms. Hoover emails Ms. Rumens about the Bonney Lake Property

19  saying she "would like to try and make arrangements" with IH6, and Ms. Hoover provides her

20  contact information explaining she is available by phone, text, or email. Henry Decl. IH6 Ex. 1,

21  ECF No. 73.

22      **November 18, 2019:** Ms. Rumens emails Ms. Hoover at 12:06 PM about renting the

23  home:

1
2
3
4
5
6
7

> . . . If you are interested in renting the home the first step would be to have a house inspection completed to make sure the home is safe and functional. Once that is completed and determined good to move forward, I would need any person 18 or over to complete the attached application and provide a copy of a government issued ID, along with the last 4 weeks of paystubs. Each application has a $50 fee associated with it. Upon approval, the deposit along with the move in monies would be due along with signing a lease. The rent is $2350.00 for 12 months. If you have pets, there is a $250 non-refundable pet fee per pet, along with $35.00 for pet rent a month . . . .

Henry Decl. IH6 Ex. 1, ECF No. 73.

**November 26, 2019:** IH6 receives notice of the Bankruptcy via a letter dated November 22, 2019. Bankr. No. 19-42890, Lappano Decl. ¶ 8, ECF No. 19. The time that IH6 received the letter on November 26, 2019, is unknown. The same day, Ms. Rumens emails Ms. Hoover and leaves her a voicemail; Ms. Rumens states in her email "If you are wanting to apply to rent the home [from IH6], we will need to get the inspection done as soon as possible." Henry Decl. IH6 Ex. 1, ECF No. 73.

**December 24, 2019:** PHH formally approves Ms. Hoover as the "confirmed successor in interest" on the Loan. Prudent Decl. ¶ 27, ECF No. 64.

**January 10, 2020:** IH6 files a motion to reopen Ms. Hoover's chapter 13 case and a motion to annul the automatic stay for the Bonney Lake Property. Bankr. No. 19-42890, ECF Nos. 17, 18 (the "Annulment Motion"). The Court reopens the Bankruptcy on February 14, 2020. Bankr. No. 19-42890, ECF No. 37.

**January 25, 2020:** Ms. Hoover, through counsel, files a one-count complaint against PHH, QLS, and IH6 for willful violation of the automatic stay under 11 U.S.C. § 362(k)(1).[6] ECF No. 1; Bankr. No. 19-42890, ECF No. 23.

**February 20, 2020:** PHH joins IH6's Annulment Motion. Bankr. No. 19-42890, ECF No. 40.

**March 3, 2020:** The Court enters an order in the Bankruptcy consolidating the Annulment Motion into the Adversary Proceeding. Bankr. No. 19-42890, ECF No.44.

**March 2020:** Ms. Hoover begins sending $2,200 per month, the amount of the monthly mortgage payment, to her attorney's trust account to prevent her from falling further behind on the Loan. Henry Decl. Ex. J, ECF No. 73.

### III. DISCUSSION AND CONCLUSIONS OF LAW.

**A.  Jurisdiction.**

The Court has jurisdiction over the pending motions and adversary proceeding under 28 U.S.C. § 1334(b), and the motions and adversary proceeding are core matters under 28 U.S.C. § 157(b).

**B.  Summary Judgment Standard.**

The party seeking summary judgment bears the burden of demonstrating that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), made applicable by Rule 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986). Summary judgment should be granted if, after taking all reasonable factual inferences in the nonmoving party's favor, the court finds that no

---

[6] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

1
2
3
4
5
6
7
8
9
10
11

reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986). The responding party must present affirmative evidence to defeat a properly supported motion for summary judgment. The responding party may not rest upon mere allegations or denials of its pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 256. The burden is on the moving party to demonstrate it is entitled to summary judgment as a matter of law. *Stanley v. Novartis Pharm. Corp.*, 11 F. Supp. 3d 987, 994 (C.D. Cal. 2014) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998)). "The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact." *Stanley*, 11 F. Supp. at 994 (citing *Celotex*, 477 U.S. at 323).

12
13
14
15
16
17
18
19
20
21
22
23
24
25

"'[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them.'" *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720 (4th ed.) ("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."); *see also ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) ("We evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.") (citations and internal quotation marks omitted).

/ / /

/ / /

**C. The Sale Violated the Automatic Stay and the Sale is Void.**

> **1. The Parties' Arguments on the Automatic Stay's Impact on the Sale.[7]**

Ms. Hoover asserts that the Sale violated one or more of the following provisions of the automatic stay, § 362(a)(3), (4), (5), or (6), because the Bankruptcy was pending during the Sale and she held an interest in the Bonney Lake Property that was property of her bankruptcy estate. Generally, these subsections of § 362(a) prohibit acts to obtain possession of, to exercise control over, or to enforce a lien against property of the estate or alternatively to pursue a pre-petition debt against property of the debtor. § 362(a)(3), (4), (5), and (6).

PHH asserts that the nature of Ms. Hoover's interest in her residence is not protected under the automatic stay because: 1) she was not obligated on the Loan; 2) she was not named on the Bonney Lake Property's title; 3) she was not a "confirmed successor in interest" in PHH's records; and 4) the Bonney Lake Property was held in a spendthrift trust that is excluded from being property of the estate under § 541(c)(2). IH6 takes a similar view concerning the nature of Ms. Hoover's interest in the Bonney Lake Property.

> **2. Ms. Hoover's Interest in the Bonney Lake Property on the Date of the Sale was Property of the Estate Under § 541.**

>> **a. What Constitutes a Legal or Equitable Interest is Broadly Construed.**

Section 541(a)(1) provides generally that except for subsections (b) and (c)(2), the commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). What constitutes a debtor's "legal or equitable interest" is broadly construed. *United States v.*

---

[7] QLS's MSJ does not address the issue of whether the Sale violated the automatic stay but instead argues that its actions under these facts do not constitute a willful violation of the stay, which is addressed later. *See infra* Discussion § G.

1     *Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983) (citing H.R. REP. NO. 95–595, at 367 (1977); S.

2 REP. NO. 95–989, at 82 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5868, 6323 ("The scope of

3 this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or

4 intangible property, causes of action (*see* Bankruptcy Act § 70a(6)), and all other forms of

5 property currently specified in section 70a of the Bankruptcy Act.")). Furthermore, such legal

6 and equitable interests are property of the estate wherever they are located and by whomever

7 they are held (e.g., debtor or non-debtor). § 541(a).

8        Neither PHH nor IH6 dispute that Ms. Hoover held an *interest* in the Bonney Lake

9 Property as of the date of the Sale. They also do not challenge the unambiguous language in

10 the Will and Suleiman Trust provisions, which directed the Bonney Lake Property transfer first

11 to the Suleiman Trust upon Mr. Suleiman's death and then clearly directed the co-trustees to

12 transfer the Bonney Lake Property to Ms. Hoover "as soon as practicable" so long as she is

13 surviving. *See* Hoover Decl. Ex. 1, ECF No. 43 (referring to the Suleiman Trust's third

14 amendment § B.2.3.1). Instead, PHH and IH6 argue that Ms. Hoover's interest is not an

15 interest in estate property largely because of irrelevant technicalities with title, successor in

16 interest status, and failing to properly assume the Loan, which misconstrue the scope of

17 § 541(a)(1). Accordingly, it is undisputed that Ms. Hoover held an interest in the Bonney Lake

18 Property at the time of the Bankruptcy under § 541(a)(1).

19        Therefore, the remaining issue is whether such interest is excluded from the estate

20 because it falls within the exception contained in § 541(c)(2).

21 / / /

22 / / /

23 / / /

24

25

1

2

### b. Ms. Hoover's Interest in the Bonney Lake Property is Not Excluded from the Estate Under § 541(c)(2).

3

4    PHH and IH6 argue that the spendthrift provisions of the Suleiman Trust are

5    restrictions on transfer, excluding the Bonney Lake Property from property of the estate under § 541(c).

6    Section 541(c)(1) generally states that except as provided in § 541(c)(2), property is

7    property of the estate under § 541(a)(1), (2), and (5) even where there are restrictions or

8    conditions on a debtor's transfer of such a property interest. Section 541(c)(2) thereafter

9    provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust **that**

10   **is enforceable under applicable nonbankruptcy law** is enforceable in a case under this

11   title." § 541(c)(2) (emphasis added). In this case, given the nature of the trust at issue and the

12   Suleiman Trust's choice of law provision, Washington State law is the "applicable

13   nonbankruptcy law" to determine whether the spendthrift provisions of the Suleiman Trust are

14   enforceable.

15   Spendthrift trust provisions in Washington State only protect trust assets where the

16   beneficial asset has not yet accrued. In Washington State, creditors can seize only the portion

17   of a spendthrift trust that has accrued and is ready for distribution to the beneficiary. *Knettle v.*

18   *Knettle*, 197 Wash. 225, 227–28, 84 P.2d 996, 997 (1938). The bankruptcy court has relied on

19   this provision in the past in determining whether spendthrift trust property is property of the

20   estate. *See Garrett v. Finley (In re Finley)*, 286 B.R. 163, 166 (Bankr. W.D. Wash. 2002).

21   "This rule is contrary to the rule in the majority of jurisdictions that does not permit a creditor to

22   reach a beneficiary's interest until it is actually paid to the beneficiary." *In re Finley*, 286 B.R.

23   at 166. Thus, any accrued portions of a trust (i.e., ready for distribution) are subject to creditor

24

25

1   seizure under Washington State law and, therefore, are part of the bankruptcy estate. *Finley*,

2   286 B.R. at 166; *Knettle*, 197 Wash. at 227–28, 84 P.2d at 997.

3           The undisputed facts show that Ms. Hoover's interest in the Bonney Lake Property had

4   accrued as of the date of the Bankruptcy's petition based on the provisions of the Will and the

5   Suleiman Trust that triggered upon Mr. Suleiman's death. First, the Will's pour-over provision

6   devised all his interests in the Bonney Lake Property to the Suleiman Trust. Second, the

7   Suleiman Trust's third amendment contained mandatory conveyance language to distribute all

8   interests that the Suleiman Trust has in the Bonney Lake Property to Ms. Hoover as soon as

9   practicable after his death. Hoover Decl. Ex. 1, ECF No. 43. Since spendthrift provisions in

10  Washington State only protect trust assets where the beneficial asset has not yet accrued,

11  *see Finley*, 286 B.R. at 166, *and Knettle*, 197 Wash. at 227–28, 84 P.2d at 997, the Suleiman

12  Trust's spendthrift provision is not enforceable under Washington State law. Accordingly, Ms.

13  Hoover's interest in the Bonney Lake Property is not excluded from the estate under

14  § 541(c)(2).

15          **3.  The Sale Violated § 362(a)(3) & (4) and is Void.**

16          Ms. Hoover filed the Bankruptcy on September 9, 2019, Bankr. No. 19-42890, ECF

17  No. 1, and the Sale occurred on September 13, 2019, Prudent Decl. ¶ 26, ECF No. 64. The

18  Sale clearly constitutes an act to both enforce a lien and to take possession and control of

19  property of the estate in violation of § 362(a)(3) and (4). Accordingly, based on the undisputed

20  facts in this case, the Sale is void. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992).

21  / / /

22  / / /

23  / / /

1

**D.  The Facts of this Case Do Not Support Annulment.**

2

    **1.  Annulment Standards Generally.**

3

4

    PHH and IH6 jointly seek to annul the automatic stay under § 362(d) in order to

retroactively validate the void post-bankruptcy Sale. *See generally Lone Star Sec. & Video,*

5

*Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 172 (9th Cir. BAP 2005) (explaining that

6

7

annulment "has the effect of retroactively validating acts that otherwise violated the stay."). In

8

general, although the debtor has the burden of proving that "cause" does not exist to annul the

9

stay under § 362(d)(1) and 362(g)(2), bankruptcy courts have wide latitude in balancing the

10

equities under the facts of a particular case. *See Natl Env't Waste Corp. v. City of Riverside*

11

*(In re Natl. Env't Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir. 1997); *Fjeldsted v. Lien (In re*

12

*Fjeldsted)*, 293 B.R. 12, 24 (9th Cir. BAP 2003).

13

    In balancing the equities to determine if cause exists, bankruptcy courts have applied

14

the following factors, as applicable to the facts of a particular case:

15

        1. Number of filings;

16

        2. Whether, in a repeat filing case, the circumstances indicate an
        intention to delay and hinder creditors;

17

        3. A weighing of the extent of prejudice to creditors or third parties if
        the stay relief is not made retroactive, including whether harm
        exists to a bona fide purchaser;

18

19

        4. The debtor's overall good faith under totality of circumstances
        test: *cf. Fid. & Cas. Co. of N.Y. v. Warren (In re Warren)*, 89 B.R.
        87, 93 (9th Cir. BAP 1988) (chapter 13 good faith);

20

        5. Whether creditors knew of stay but nonetheless took action, thus
        compounding the problem;

21

22

        6. Whether the debtor has complied, and is otherwise complying,
        with the Bankruptcy Code and Rules;

        7. The relative ease of restoring parties to the status quo ante;

23

        8. The costs of annulment to debtors and creditors;

24

        9. How quickly creditors moved for annulment, or how quickly
        debtors moved to set aside the sale or violative conduct;

25

        10. Whether, after learning of the bankruptcy, creditors proceeded
        to take steps in continued violation of the stay, or whether they
        moved expeditiously to gain relief;

11. Whether annulment of the stay will cause irreparable injury to the debtor;

12. Whether stay relief will promote judicial economy or other efficiencies.

*Fjeldsted*, 293 B.R. 12, 25 (collectively the "Annulment Factors"). The Annulment Factors "are merely a framework for analysis and not a scorecard," and "[i]n any given case, one factor may so outweigh the others as to be dispositive." *Fjeldsted*, 293 B.R. at 25.

### 2. The Balance of the Equities in This Case Does Not Support Stay Annulment.

Several of the Annulment Factors—Annulment Factors 1, 2, & 6—look at the debtor's filing history and compliance with the Bankruptcy Code and Rules. Ms. Hoover is not a serial filer abusing the imposition of the stay through multiple filings. She filed only one bankruptcy case for the purpose of stopping the Sale. When the Sale proceeded despite the automatic stay, she did not oppose dismissing the case for failure to file schedules, statements, lists, or a chapter 13 plan. *See* Bankr. No. 19-42890, ECF No. 14. Additionally, Ms. Hoover is continuing to place the monthly payment amount for the Bonney Lake Property in her attorney's trust account pending this Court's decision and the filing of a chapter 13 plan to address remaining unpaid obligations to the Beneficiary under the Loan. These factors do not support annulment as they show that Ms. Hoover is not abusing the bankruptcy system.

In balancing the equities, courts look at the general good faith or lack of good faith of the debtor and the creditors, both generally and in connection with the stay violation—Annulment Factors 4, 9, & 10. PHH and IH6 allege that Ms. Hoover's failure to transfer title to the Bonney Lake Property shows a lack of good faith in light of Ms. Hoover's and her husband's prior real estate experience and their transfer of the Kent and Auburn Properties from the Suleiman Trust. The record, however, does not support a finding of bad faith under

these facts and circumstances. Under the terms of the Suleiman Trust, the co-trustees were directed to sell the Kent and Auburn Properties, necessitating the transfer of title upon such sale. The Suleiman Trust, however, treated the Bonney Lake Property differently—this property was to be transferred "as soon as practicable" to Ms. Hoover after Ali Suleiman's death. *See* Hoover Decl. Ex. 1, ECF No. 43. While the title transfer never happened, the record clearly supports Ms. Hoover's multiple good faith dealings with Ocwen, PHH, NewRez, and QLS regarding the Bonney Lake Property when she provided the necessary paperwork to notify the Beneficiary and its servicers of her father's death, and she provided the terms of the Will and Suleiman Trust and the documentation to assume or seek the Loan's modification. Also, Ms. Hoover tried resolving the foreclosure proceeding before the Sale and to otherwise resolve all issues related to the Bonney Lake Property in good faith.

In contrast, PHH's actions—one of the moving parties—shows a complete disregard for the automatic stay and Ms. Hoover's rights by failing to stop the Sale *despite receiving notice* of the Bankruptcy both four days and one day before the Sale. Such notice, by both fax and telephone, provided more than sufficient time for PHH to stop the Sale, yet PHH chose not to. At the same time, the other moving party, IH6, took, at a minimum, 45 days to file the Annulment Motion. While the earliest date of IH6's knowledge of the Bankruptcy is in dispute, it is undisputed through IH6's admission that IH6 was aware of the Bankruptcy at least as of November 26, 2019. Even so, IH6 waited until January 10, 2020, to file the Annulment Motion.

The final Annulment Factors compare the relative harm to the parties as well as the costs and ease of returning the affected parties to the *status quo ante* after an annulment of the stay—Annulment Factors 3, 7, 8, & 11. These relative harm factors are the most

significant factors in balancing the equities between IH6 and PHH, and Ms. Hoover in this case.

Here, if annulment is granted, IH6, as a third-party purchaser for investment purposes, would likely take advantage of a business opportunity and could rent and later sell the Bonney Lake Property to a third party for profit. Without annulment, the sale would be void and IH6 would lose this money-making opportunity. PHH also would benefit from annulment as it could then be paid in full with the funds currently held in the court registry. Without annulment, any prejudice to PHH would be minimal, however, because PHH would receive the monthly mortgage payments that Ms. Hoover has remitted to her attorney's trust account throughout the pendency of this litigation. Although there may be delay in curing any arrears on the Loan if Ms. Hoover files another chapter 13, the record here shows there is at least $167,000 of equity in the Bonney Lake Property, which will adequately protect PHH.

In contrast, if annulment is granted, Ms. Hoover and the seven other family members who live at the Bonney Lake Property (i.e., her husband, her two children, her niece, and the niece's three young children) would lose their family home and be required to move to another dwelling. *See* Bankr. No. 19-42890, Hoover Decl. ¶ 2, ECF No. 25. At a minimum, annulment would cause Ms. Hoover and her family financial harm, including relocation costs and costs of deposits or down payments on new residences (even assuming both families would be able to find affordable accommodations); physical dislocation; and likely significant emotional distress. Furthermore, these costs would be exacerbated by the ongoing global COVID-19 pandemic. As such, relative harm factors strongly weigh in favor of Ms. Hoover and not granting annulment.

From the undisputed facts, this Court finds that factors one, two, four, five, six, seven, eight, nine, ten, and eleven favor Ms. Hoover. These are the most important Annulment Factors under these facts, which tilt the scales of justice in Ms. Hoover's favor because of the balance of harm discussed above. Balancing the equities and considering the totality of the circumstances here, the Court denies IH6's motion, and PHH's joinder, to annul the automatic stay.

Having found the Sale violated the stay, the Sale is void, and annulment is not warranted here, the Court now turns to whether the each of the Defendants' actions in relation to the foregoing stay violations and the Sale constitute a willful violation of the stay entitling Ms. Hoover to prove damages under § 362(k) at a later proceeding.[8]

**E.  PHH, NewRez, and the Trust are Liable for Willfully Violating the Stay.**

      **1.  PHH was the Agent of NewRez and the Trust When It Conducted the Sale.**

The record shows that the Trust delegated authority to NewRez under a power of attorney to have authority to pursue, among other things, a foreclosure or other sale of the Bonney Lake Property. Following the merger of PHH and Ocwen, NewRez delegated the authority under a limited power of attorney to PHH to take certain such actions in connection with a foreclosure sale. *See* Henry Supp. Decl. Ex. G 2–6, ECF No. 50.

"A power of attorney is a written instrument by which one person as principal appoints another as agent and confers on the agent's authority to act in the place and stead of the principal for the purposes set forth in the instrument." *Winters v. Quality Loan Serv. Corp*, 11 Wn. App. 2d 628, 646, 454 P.3d 896, 906 (Wash. Ct. App. 2019) (citing *Bryant v. Bryant*, 125

---

[8] Under § 362(k)(1), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." § 362(k)(1).

1  Wn.2d 113, 118, 882 P.2d 169, 171 (1994)). Additionally, the Uniform Power of Attorney Act,

2  chapter 11.125, defines an agent as follows:

3
4        [A] person granted authority to act for a principal under a power of
         attorney, whether denominated an agent, attorney-in-fact, or
         otherwise. The term includes an original agent, coagent, successor
5        agent, and a person to which an agent's authority is delegated.

6  Wash. Rev. Code ("RCW") § 11.125.020(1).

7        The scope of the two powers of attorney clearly encompass the actions of PHH and

8  NewRez taken under their delegated authority "[t]o pursue any . . . debt or other obligation . . .

9  arising from foreclosure or other sale[;]" conduct the Sale or discontinue the Sale; appear in

10 bankruptcy cases; and execute documents related to the Sale. *See* Henry Supp. Decl. Ex. G

11 2–6, ECF No. 50. Thus, PHH was an agent of NewRez and the Trust, and PHH had authority

12 to bind them both as principals to its actions relating to the Sale.[9] Furthermore, PHH's role as

13 an agent of NewRez and the Trust meets the clear definition of "agent" in RCW

14 § 11.125.020(1).

15
16       **2.  PHH's Actions and Failures to Act in Connection with the Sale are Willful
             Violations of the Stay Under Applicable Ninth Circuit Law.**

17       Whether PHH or the other Defendants willfully violated the automatic stay is a question

18 of fact. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002). The Ninth

19 Circuit's test for willful automatic stay violations under § 362(k)(1) requires a showing that: (1)

20 the creditor knew of the automatic stay, and (2) the actions in violation of the stay were

21 intentional acts or failures to act in remedying the violation. *In re Dyer*, 322 F.3d 1178, 1192

22 (9th Cir. 2003); *Eskanos*, 309 F.3d at 1215; *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989).

23 No specific intent is required; a good faith belief that the stay is not being violated "is not

24

25
───────────────────────────

[9] Accordingly, hereafter, references to PHH's actions shall be deemed to apply to NewRez
and the Trust.

1   relevant to whether the act was 'willful' or whether compensation must be awarded." *Johnston*

2   *Envt'l Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir. 1993).

3          Furthermore, the Ninth Circuit imposes a duty on a creditor with knowledge of a

4   bankruptcy filing to remedy the stay violations and undo its acts that violate the automatic

5   stay. *See Dyer*, 322 F.3d at 1192 (holding that when a creditor has knowledge of a violation of

6   the automatic stay, that creditor has an affirmative duty to undo the violation); *Rediger Inv.*

7   *Corp. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.)*, 503 B.R. 726, 737

8   (9th Cir. BAP 2013) (explaining that once a creditor and its counsel are aware of a debtor's

9   bankruptcy, the onus is on the creditor to cease all efforts related to the debtor in its pending

10  state-court action without further order from the bankruptcy court and to remedy the impact of

11  existing stay violations); *Copeland v. Kandi (In re Copeland)*, 441 B.R. 352, 360 (Bankr. W.D.

12  Wash. 2010) (failing to take reasonable steps to remedy an action that violates the stay is a

13  continuing stay violation). A creditor's liability under § 362(k)(1) continues until full restitution is

14  made or, if after expiration of the stay, until the court orders full restitution. *In re LeGrand*, 612

15  B.R. 604, 612 (Bankr. E.D. Cal. 2020) (citing *Snowden v. Check Into Cash of Wash., Inc. (In*

16  *re Snowden)*, 769 F.3d 651, 659 & 662 (9th Cir. 2014); *Sundquist v. Bank of America, N.A. (In*

17  *re Sundquist)*, 566 B.R. 563, 586 (Bankr. E.D. Cal. 2017)).

18         There is no genuine dispute of material fact that PHH had notice of the Bankruptcy on

19  September 9, 2019, via fax. Bankr. No. 19-42890, Hoover Decl. Ex. J, ECF No. 26; Henry

20  Decl. Ex. A, Prudent Dep. 84, Aug. 12, 2020, ECF No. 73. PHH also received additional

21  notice of the Bankruptcy before the Sale on September 12, 2019. Henry Decl. Ex. B, ECF No.

22  44. Despite PHH receiving these notices before the Sale, PHH did nothing. Before the Sale, it

23  did not inform QLS, the foreclosure trustee conducting the Sale, or any potential purchasers at

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

the Sale, including IH6, of the Bankruptcy. PHH's failure to act allowed QLS to sell the Bonney

Lake Property at the Sale to a third-party purchaser, allowed the Deed to be transferred to

that purchaser, and allowed that purchaser to record the Deed. This all occurred while the

automatic stay was in effect. PHH sat on the information and did not take any steps to rectify

its stay violation until it joined IH6's Motion to Annul the Automatic Stay on February 20,

2020—160 days after the Sale. *See* Bankr. No. 19-42890, ECF No. 40.

      Under these undisputed facts, PHH willfully violated the automatic stay. *See*, *e.g.*,

*Burton v. Infinity Capital Mgmt.*, 862 F.3d 740, 747 (9th Cir. 2017) (explaining that a party that

fails to at least alert the court of potential conflicts between an order and the automatic stay

does not satisfy a non-debtor's affirmative duty of compliance). PHH knew that the automatic

stay existed, and it bears responsibility for any violations caused by its intentional actions (or

inactions) until the sale is rescinded and title is restored to Ms. Hoover, regardless of whether

it specifically intended such actions to violate the stay. *See*, *e.g., Goodman*, 991 F.2d at 618.

In doing so, PHH also was acting on behalf of NewRez and the Trust. Accordingly, the

Debtor's MSJ is granted regarding PHH, NewRez, and the Trust, and PHH's MSJ is denied.

**F.  A Material Issue of Fact Exists on When IH6 Received Notice of the Bankruptcy and Prevents Granting Summary Judgment to Either Ms. Hoover or IH6.**

      The next issue is whether either Ms. Hoover or IH6 is entitled to summary judgment as

a matter of law on the issue of whether IH6 willfully violated the automatic stay. As noted

above, it is undisputed that IH6 did not know of the Bankruptcy until after it purchased the

Bonney Lake Property and after QLS delivered the Deed on September 17, 2019, *see* Bankr.

No. 19-42890, Stenman Decl. Ex. D, ECF No. 20. As explained more fully below, there is a

dispute, however, about when IH6 thereafter acquired knowledge of the Bankruptcy. This fact

is material to the Court's determination of whether IH6 willfully violated the stay.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

IH6 asserts that it was first notified of the Bankruptcy on November 26, 2019, when it received a letter from Ms. Henry dated November 22, 2019, about the Sale's violation of the automatic stay. *See* Bankr. No. 19-42890, Lappano Decl. Ex. C ¶¶ 7–8, ECF No. 19. Ms. Hoover alleges, however, that IH6 knew about the Bankruptcy significantly earlier. Specifically, Ms. Hoover alleges the following three earlier dates that IH6 received notice of the Bankruptcy: (1) September 24, 2019: Elite Legal Network notified IH6 on Ms. Hoover's behalf, Bankr. No. 19-42890, Hoover Decl. ¶ 49, ECF No. 25; (2) October 1, 2019: Ms. Hoover said "I spoke to Michael Lappano at IH6. I believe this was on October 1, 2019. I informed him that I had filed bankruptcy. Mr. Lappano indicated that he would have no problem selling my house back to me, but that he would require QLS to pay an additional $100,000 above IH6's purchase price at the foreclosure sale." Hoover Decl. ¶ 53, ECF No. 43; and (3) October 23, 2019: QLS's General Counsel, Robert McDonald, states in a timestamped email that the "third[-]party purchaser aware[sic] of bankruptcy filing and did not want sale unwound. He has been advised to seek confirmation of sale in BK – not sure if he did that or not. I will contact him now for an update." Henry Decl. QLS Ex. 1, ECF No. 73.[10]

16
17
18
19
20
21

For purposes of both Ms. Hoover's and IH6's MSJs, it is undisputed that between September 17, 2019 (the date IH6 received the Deed), and November 26, 2019 (the date IH6 received notice of the Bankruptcy), IH6 representatives recorded the Deed, on September 26, 2019.[11] It is also undisputed that during this period, IH6's representatives had several

22
23
24
25

---

[10] Each of the foregoing allegations has potential evidentiary issues, particularly hearsay issues or a lack of foundation that prevent the Court from relying on them for purposes of summary judgment. *See Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) (stating a trial court can only consider admissible evidence in ruling on a motion for summary judgment). These issues could be addressed at trial through additional evidence or testimony.
[11] The Court dismissed the Bankruptcy on the same day. The relative timing of these two events is not clear from the record.

1    interactions with Ms. Hoover where they offered to sell or rent the Bonney Lake Property to

2    her.

3          Taking the facts in the light most favorable to IH6 in connection with Ms. Hoover's MSJ,

4    IH6 first learned of the Bankruptcy on November 26, 2019. Additionally, IH6's representatives

5    had their last interaction with Ms. Hoover on that same date, halting all actions against Ms.

6    Hoover and the Bonney Lake Property after learning of the Bankruptcy.[12] These facts, if

7    undisputed, would support a determination that IH6 did not willfully violate the automatic stay.

8          On the other hand, if the Court takes the facts in the light most favorable to Ms. Hoover

9    in connection with IH6's MSJ, IH6 was informed about the Bankruptcy as early as September

10   24, 2019. Despite this knowledge, IH6 recorded the Deed on September 26, 2019.

11   Additionally, IH6's representatives thereafter contacted Ms. Hoover several times about

12   selling or renting the Bonney Lake Property to her. These facts, if undisputed, would support a

13   determination that IH6 willfully violated the automatic stay.

14         Based on the record before it, the Court finds that issues of material fact exist about

15   when IH6 learned of the Bankruptcy and whether IH6 took any actions with respect to the

16   Bonney Lake Property thereafter that constitute a willful violation of the stay. Accordingly, the

17   Court must deny both Ms. Hoover's MSJ and IH6's MSJ on the claim that IH6 willfully violated

18   the automatic stay.[13]

19   / / /

20

21   [12] Ms. Hoover alleges that on the date IH6 admits to receiving notice, November 26, 2019, a
     representative of IH6 contacted Ms. Hoover about rent. Again, the record is not clear about
22   the relative timing between these two events. Additionally, Mr. Lappano's Declaration
23   indicates that "[a]fter receiving notice of Sara's [sic] Hoover's claim that the trustee's sale
     violated the automatic stay, IH6 Property immediately put a hold on its Unlawful Detainer
24   action and retained counsel to address Sarah Hoover's claim in the bankruptcy." *See*
     Lappano Decl. ¶¶ 7–8, Bankr. No. 19-42890, ECF No. 19.
25   [13] If Ms. Hoover seeks to pursue her claims against IH6 at trial, the Court may require briefing
     on the dismissal's impact on her § 362(k) claims relative to the date of IH6's notice of the
     Bankruptcy.

MEMORANDUM DECISON ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 27

1

**G. QLS Did Not Willfully Violate the Automatic Stay Under the Facts of this Case.**

2

**1.  The Material Facts and the Parties' Positions.**

3

**a.  *Undisputed Relevant Facts.***

4

The following undisputed material facts are relevant to whether QLS willfully violated

5

the automatic stay. QLS served as the foreclosure trustee for the Sale on September 13,

6

2019. On September 17, 2019, before learning about the Bankruptcy, QLS delivered the

7

Bonney Lake Property's Deed to IH6, the third-party purchaser. Bankr. No. 19-42890,

8

Stenman Decl. Ex. D, ECF No. 20. QLS did not learn about the stay until September 24,

9

2019. Henry Decl. Ex. L, Stenman Dep. 56:4–23, July 7, 2020, ECF No. 73; Henry Decl.

10

Stenman Ex. 3, ECF No. 73. On that date, QLS inspected Ms. Hoover's skeletal bankruptcy

11

petition (i.e., a petition, matrix listing only PHH as a creditor, but no schedules or bankruptcy

12

plan) but could not verify her ownership interest in the Bonney Lake Property. Henry Decl. Ex.

13

L, Stenman Dep. 90:1–11, ECF No. 73; Bankr. Case No. 19-42890, ECF No. 1. Additionally,

14

between January 31, 2019, and September 18, 2019, QLS searched LexisNexis Banko 15

15

times for the Bankruptcy using her correct social security number. Bankr. Case No. 19-42890,

16

Stenman Decl. ¶ 9, ECF No. 20. The Bankruptcy did not appear through these searches.

17

Bankr. Case No. 19-42890, Stenman Decl. ¶ 9, ECF No. 20.

18

Upon learning of the Bankruptcy, QLS did not immediately notify PHH or IH6. QLS did

19

not take steps to void or rescind the Sale, take any action to obtain possession of or exert

20

control over the Bonney Lake Property, or otherwise interfere with Ms. Hoover's interest in the

21

Bonney Lake Property. The Court dismissed the Bankruptcy on September 26, 2019, and

22

closed the Bankruptcy on October 2, 2019.

23

Additionally, on October 23, 2019, QLS's General Counsel, Robert McDonald, states in

24

a timestamped email that the "third[-]party purchaser aware[sic] of bankruptcy filing and did

25

not want sale unwound. He has been advised to seek confirmation of sale in BK – not sure if he did that or not. I will contact him now for an update." Henry Decl. QLS Ex. 1, ECF No. 73.[14]

Significantly, there was a legal dispute among Ms. Hoover, the PHH defendants, and IH6 concerning the nature of Ms. Hoover's interest in the Bonney Lake Property and the impact of the automatic stay on the Sale. QLS took no position on these legal issues in its pleadings in this case.

### b. The Parties' MSJ Arguments on QLS's Alleged Willful Stay Violation.

Ms. Hoover seeks a declaration that QLS be held liable for a willful violation of the stay for its inaction after learning about the Bankruptcy. Specifically, Ms. Hoover argues that QLS is jointly and severally liable with the other Defendants for willfully violating the stay because it failed to notify this Court of the Sale and surplus funds, failed to notify PHH upon learning of the Bankruptcy, and failed to cooperate with Ms. Hoover to unwind the sale.[15]

QLS argues it did not willfully violate the stay because it received notice of the Bankruptcy after it delivered the Deed to IH6 on September 17, 2019. Further, QLS argues it

---

[14] This evidence cannot be accepted for determining the date IH6 received notice of the Bankruptcy. However, this Court notes there does not appear to be any dispute that QLS believed on October 23, 2019, that it had communicated with the third-party purchaser who did not want the Sale unwound, and that the third-party purchaser would be seeking a ruling in bankruptcy court to resolve the automatic stay issue.

[15] In the complaint, Ms. Hoover also argued that QLS should have voided the sale under RCW 61.24.050(2) because it received notice on the 11th day after the Sale. However, in Ms. Hoover's response to QLS's original motion for summary judgment and dismissal, Ms. Hoover seems to discard this argument on QLS's liability for a willful violation. Hoover Resp. to QLS 7:17–19, ECF No. 28. Ms. Hoover states, "[t]o be clear, QLS'[s] liability for violating the automatic stay arises from its inaction (regardless of when it learned of the automatic stay). Any references to the [Washington] Deed of Trust Act are not pertinent to liability." Hoover Resp. to QLS 7:17–19, ECF No. 28. Since the Debtor's MSJ only addresses liability, the Court will not address the RCW 61.24.050(2) argument. This Court notes that if it held QLS was obligated to void a sale upon receiving notice of a bankruptcy filing despite RCW 61.24.050(2)'s discretionary language, the Court would not find QLS's failure to do so constituted a willful stay violation here because of the timing when QLS received notice and QLS's inability to verify Ms. Hoover's Bonney Lake Property interest from the Bankruptcy.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

could not be a "judge" in resolving whether the sale should be unwound because of the legal dispute among Ms. Hoover, PHH, and IH6 over the automatic stay's impact on the nature of Ms. Hoover's interest in the Bonney Lake Property. For the reasons below, this Court agrees with QLS.

### 2. Under these Facts, QLS's Failure to Act Is Not a Willful Stay Violation.

While the Ninth Circuit has determined that a "failure to act" may constitute a willful stay violation, *see Dyer*, 322 F.3d at 1192, here the undisputed facts do not establish that QLS has committed a willful stay violation. Such findings are typically made in connection with a party's failure to remedy a stay violation it committed or where such party had a duty to take remedial action, *see supra* Discussion § E.2. It is undisputed, however, that QLS did not take any action with knowledge of the Bankruptcy. QLS conducted the Sale according to the Washington Deed of Trust Act ("DTA") and sold the Bonney Lake Property to a third-party purchaser without knowledge of the Bankruptcy. Thus, QLS did not commit any actions in conducting the Sale that are willful stay violations. Following the Sale and before receiving notice of the Bankruptcy, QLS also delivered the Deed to the third-party purchaser. As Ms. Hoover admits, upon physical delivery of the Deed to IH6, QLS had complied with its duties under the DTA. *See* RCW 61.24.050(1).

After completing its duties under the DTA, it is further undisputed that QLS did not commit any act against Ms. Hoover or the Bonney Lake Property that violated the provisions of Section 362(a). Although this Court determined the Sale is void, it is undisputed that QLS was unaware of the Bankruptcy during the Sale and delivery of the Deed. After receiving notice of the Bankruptcy, QLS also did not commit a willful violation by failing to act after fulfilling its obligations under the DTA because it had no ability to take any further action

1  (absent a court order), like rescinding the Sale. Under these facts, the Court finds that QLS

2  did not commit any act or fail to take any action that willfully violated the automatic stay.

3      Accordingly, the Debtor's MSJ as to QLS's alleged willful stay violation is denied and

4  QLS is entitled entry of an order declaring that its actions to date did not constitute a willful

5  violation of the stay.

6                              **III.    Conclusion.**

7      The Court concludes that the Bonney Lake Property foreclosure sale to IH6 and

8  subsequent Deed transfer and recordation violated the automatic stay and are therefore void.

9  All Defendants shall cooperate with Ms. Hoover and her counsel to immediately take all

10 necessary steps to undo the foreclosure sale of the Bonney Lake Property.

11     Ms. Hoover has established as a matter of law that she is entitled to partial summary

12 judgment as to PHH's, the Trust's, and NewRez's willful stay violations. The Court makes no

13 finding as to the specific damages owed to Ms. Hoover.

14     As described above, a genuine dispute of material fact exists concerning IH6's alleged

15 willful violation of the automatic stay. The Debtor's MSJ and IH6's MSJ on this issue are

16 denied.

17     Regarding QLS, QLS has established that it is entitled to summary judgment as a

18 matter of law. QLS's MSJ is granted but QLS is not yet dismissed. This Court will address

19 QLS's dismissal at a future status conference, *see below*. As such, the Debtor's MSJ as to

20 QLS is denied.

21     IH6's MSJ and PHH's MSJ are denied, and IH6's and PHH's Annulment Motion is

22 denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

    Judge Heston's Courtroom Deputy will contact the parties to schedule a status conference to discuss how best to proceed in this case in light of the Court's Memorandum Decision, including the effect of the Sale being declared void, the remaining claims against IH6, and resolution of any damage claims.

/// End of Memorandum Decision ///

Entered on Docket February 8, 2021

Below is the Order of the Court.

Mary Jo Heston
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

_____

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: | |
| | Bk. No. 19-42890 |
| SARAH HOOVER, | |
| Debtor. | |
| | |
| SARAH HOOVER, | Adversary No. 20-04002 |
| Plaintiff, | |
| v. | **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| QUALITY LOAN SERVICE CORPORATION OF WASHINGTON; PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES; HSBC BANK USA, N.A., AS TRUSTEE OF THE FIELDSTONE MORTGAGE INVESTMENT TRUST, SERIES 2006-2; NEWREZ, LLC; AND IH6 PROPERTY WASHINGTON, L.P. D/B/A INVITATION HOMES, | |
| Defendants. | |

This adversary proceeding and the pending motions for summary judgment (collectively the "MSJs") involve the impact of the automatic stay on the post-bankruptcy

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 1

foreclosure sale of the Plaintiff's, Ms. Sarah Hoover ("Ms. Hoover"), family residence located at 18205 106th Street East, Bonney Lake, Washington (the "Bonney Lake Property"), and whether each defendant is liable for any violation of the automatic stay.

The parties to the MSJs are: (i) Plaintiff-Debtor, Ms. Hoover; (ii) Defendant, PHH Mortgage Corporation ("PHH"), the special servicer for the loan (the "Loan") secured by the Bonney Lake Property; (iii) Defendant, NewRez, LLC ("NewRez"), the general servicer of the Loan; (iv) Defendant, HSBC Bank USA, N.A (the "Trust"), as Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-2 (the "Beneficiary"); (v) Defendant, Quality Loan Service Corporation of Washington ("QLS"), the foreclosure trustee; and (vi) Defendant, IH6 Property Washington L.P. ("IH6"), the third-party purchaser at the foreclosure sale.

The following MSJs came before the Court for argument on November 20, 2020:

(1) Ms. Hoover's Motion for Partial Summary Judgment, ECF No. 42 ("Debtor's MSJ"), seeking a declaration that the foreclosure sale violated the automatic stay and that each defendant's conduct constitutes a willful violation of the automatic stay;[1]

(2) QLS's Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice and its dismissal from the adversary proceeding, ECF No. 58 ("QLS's MSJ");

(3) PHH's, the Trust's, and NewRez's Joint Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice and its dismissal from this adversary proceeding, ECF No. 62 ("PHH's MSJ"); and,

(4) IH6's Motion for Summary Judgment seeking dismissal of Ms. Hoover's complaint for willful violation of the automatic stay with prejudice, its dismissal from this adversary

---

[1] The Debtor's MSJ defers the issue of compensatory and punitive damages as alleged in the Amended Complaint to a future proceeding.

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 2

1
2
proceeding, ECF No. 65 ("IH6's MSJ"), and its motion for annulment of the automatic stay, Bankr. No. 19-42890, ECF No. 18.[2]

3
4
5
After oral argument on these MSJs, the Court took these matters under advisement. The Court having considered the evidence and arguments presented, and a Memorandum Decision having been entered and incorporated herein, now, therefore, it is hereby

6
7
8
9
**ORDERED** that the foreclosure sale of the Bonney Lake Property is void and all Defendants shall cooperate with Ms. Hoover and her counsel to immediately take all necessary steps to undo the foreclosure sale of the Bonney Lake Property; it is further

10
11
**ORDERED** that the Debtor's MSJ, ECF No. 42, is granted against PHH but denied in its requested relief against QLS and IH6; it is further

12
13
**ORDERED** that PHH's MSJ, ECF No. 62, and IH6's MSJ, ECF No. 65, are denied; it is further

14
15
**ORDERED** that IH6's and PHH's Annulment Motion, Bankr. No. 19-42890, ECF Nos. 18, 40, is denied; it is further

16
17
**ORDERED** that QLS's MSJ, ECF No. 58, is granted but, pursuant to the Memorandum Decision, QLS is not yet dismissed from this adversary proceeding; it is further

18
19
20
21
22
**ORDERED** that Judge Heston's Courtroom Deputy will contact the parties to schedule a time and date for a status conference to discuss how best to proceed in this case in light of the Court's Memorandum Decision, including the effect of the Sale being declared void, the remaining claims against IH6, and resolution of any damage claims.

23
/// End of Order ///

24
25

---

[2] PHH joined IH6's Motion to Annul to Automatic Stay. Bankr. No. 19-42890, ECF No. 40 (collectively the "Annulment Motion").

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 3

## CERTIFICATE OF SERVICE

On February 26, 2021, I served the foregoing document(s): DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004, in the manner described below:

Jason D. Anderson
Anderson Law of King County, PLLC
787 Maynard Ave S., Suite B
Seattle, WA 98104
Jason@alkc.net
*Counsel for Plaintiff/Debtor*

☑ CM/ECF
☐ UPS Overnight
☐ UPS 2 Day Shipping
☐ Email
☐ Courier

Christina L. Henry
Henry & Degraaff, P.S.
787 Maynard Ave S., Suite B
Seattle, WA 98104
chenry@hdm-legal.com
*Counsel for Plaintiff/Debtor*

☑ CM/ECF
☐ UPS Overnight
☐ UPS 2 Day Shipping
☐ Email
☐ Courier

Joseph W. McIntosh
McCarthy & Holthus, LLP
108 1st Ave South, Suite 300
Seattle, WA 98104
jmcintosh@mccarthyholthus.com
*Counsel for Quality Loan Service*
*Corporation of Washington*

☑ CM/ECF
☐ UPS Overnight
☐ UPS 2 Day Shipping
☐ Email
☐ Courier

John A. McIntosh
Schweet Linde & Coulson, PLLC
575 S. Michigan St.
Seattle, WA 98108
johnm@schweetlaw.com
*Counsel for IH6 Property Washington,*
*L.P.*

☑ CM/ECF
☐ UPS Overnight
☐ UPS 2 Day Shipping
☐ Email
☐ Courier

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 26, 2021

Rachel M. Perez

DEFENDANTS-APPELLANTS' MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a)(3) AND FRBP RULES 8002 AND 8004
AP No. 20-04002-MJH
Page 31

HOUSER LLP
600 University St.
Ste. 1708
Seattle, WA 98101
PH: (206) 596-7838
FAX: (206) 596-7839

Case 20-04002-MJH   Doc 90   Filed 02/26/21   Ent. 02/26/21 19:37:10   Pg. 73 of 73